2007 WY 78

**Ricky Eugene EWING, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–19.

Supreme Court of Wyoming.

May 11, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Appellant, Ricky Ewing, was charged with and convicted of interference with a peace officer under Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2003), and aggravated assault and battery with a drawn deadly weapon under Wyo. Stat. Ann. § 6–2–502(a)(iii) (LexisNexis 2003). Appellant asserts that the trial court committed revers-

ible error in refusing to give a jury instruction on the meaning of the word "drawn" as it applied to the aggravated assault charge, and that the evidence was not sufficient to support his conviction for that offense. We affirm.

## ISSUES

[¶ 2]   1. Did the district court err in refusing to give an instruction on the meaning of the word "drawn"?

2. Was there sufficient evidence presented at trial on the charge of aggravated assault to support the jury's guilty verdict?

## FACTS

[¶ 3]   At about 2:00 a.m., on January 31, 2004, Appellant returned to the home he shared with Nancy Houston after a two-week absence. Ms. Houston informed Appellant that the police had been at the house earlier that evening with a warrant for his arrest. At some point, Ms. Houston became upset with Appellant, and called the police to have him removed from the home. Appellant left the house and went to a shed on the property where he kept his tools, and where he often went to work or relax.

[¶ 4]   Several sheriff's deputies responded to Ms. Houston's call. They arrived with the dual purpose of responding to the call and of arresting Appellant on the basis of outstanding warrants. Dispatchers had already warned them that Ms. Houston believed there was a gun in the shed with Appellant. At the scene, the officers approached the shed and ordered Appellant to come out. Appellant, who had seen the officers approach on the closed circuit television system he had installed in the shed because of problems with burglaries, refused to answer. The officers then tried to open the doors to the shed. Finding the doors locked, they attempted to pry them open. While they were working to open the doors, the officers heard someone inside the shed yell, "Any [m . . . . f . . . . . .] that comes in that door is going to get shot, then I'll shoot myself in the head."[1] At that point, the officers withdrew

1. Three of the deputies testified about their recollections of this statement. While all differ slight-

and, implementing procedures for facing a "barricaded gunman," isolated and surrounded the shed, and called in Special Weapons and Tactics (SWAT) personnel. SWAT officers arrived on the scene and a standoff ensued, lasting until 6:30 in the morning. The confrontation ended when officers fired a round of pepper spray into the shed, forcing Appellant out. The responding officers arrested him and searched the shed. They found a rifle on a shelf in the shed next to the closed circuit television that Appellant had been using to monitor activity outside the shed, along with the cell phone he had been using, and a note he had written during the standoff. Nancy Houston testified that she had last seen the rifle on the floor of the shed two days before "behind a bunch of things."

[¶ 5] At trial, a jury found Appellant guilty of interference with a peace officer under Wyo. Stat. Ann. § 6–5–204(a) and aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(iii). Appellant was sentenced to one year for interference with a peace officer to run concurrently with a four-and-a-half to six-year sentence for aggravated assault. This appeal followed.

## JURY INSTRUCTION

[¶ 6] Appellant first contends that the judge erred in refusing to give the jury an instruction defining the word "drawn" as used in Wyo. Stat. Ann. § 6–2–502, which statute reads in pertinent part as follows:

(a) A person is guilty of aggravated assault and battery if he:

. . . .

(iii) Threatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]

ly in wording, the descriptions are substantially similar. This particular version is the recollection of one of the primary responding officers as noted in the report of his trainee, who was also on the scene. Mr. Ewing, on the other hand, testified that he yelled, "You [m . . . . . f . . . . . .]. First one through the door I will let shoot me in the head."

Appellant requested that the jury be instructed that "[t]o draw a firearm or deadly weapon is to point it intentionally or to aim it at a person." [2]

### *Standard of Review*

[¶ 7] Appellant incorrectly characterizes this issue as involving a failure to give a theory of defense instruction. Failure to give an instruction on the law related to a theory of defense is a due process issue, which this Court would review *de novo*. *See Wilkie v. State*, 2002 WY 164, ¶ 4, 56 P.3d 1023, 1024 (Wyo.2002) (constitutional issues are questions of law and are reviewed *de novo*). However, an instruction that simply defines a term in the charging statute and does not state a recognized legal defense is not a "theory of defense" instruction. *See Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo. 1992) (a theory of defense instruction presents a defense recognized by statute or case law). We will, therefore, review the requested instruction using our general standard of review for jury instructions.

[¶ 8] We afford the trial court wide latitude in its decisions with respect to jury instructions. *Wilson v. State*, 14 P.3d 912, 915 (Wyo.2000). We will not find reversible error in a trial court's instructions to the jury unless the instructions do not correctly state the law, or the instructions, taken as a whole, do not sufficiently cover the issues presented at trial. *Seymore v. State*, 2007 WY 32, ¶ 9, 152 P.3d 401, 404 (Wyo. 2007). A trial court has wide latitude, within those parameters, to choose jury instructions tailored to the facts and legal theories of the case. *Id.*

### *Discussion*

[¶ 9] Appellant requested a jury instruction on the meaning of the word

2. Appellant claims that the definition is from *Black's Law Dictionary*, but provides no citation. The sixth edition of *Black's Law Dictionary* contains a definition similar to that provided by Appellant, but omits the words "or to aim it at a person". *Black's Law Dictionary* 494 (6th ed.1990). It is notable, however, that in the last two editions of *Black's*, the editors have omitted the word "drawn" and no longer attempt to provide a definition.

"drawn" as used in Wyo. Stat. Ann. § 6–2–502(a)(iii). However, a trial court is under no obligation to define a statutory term unless the term carries a technical connotation different from its everyday meaning. *Durham v. State*, 422 P.2d 691, 692 (Wyo.1967). A term must only be defined if the correct legal definition is such a departure from ordinary meaning that the jury would misunderstand its application to the circumstances before it. *Wilson*, 14 P.3d at 916.

[¶ 10] We find that the term "drawn," as used in this statute, does not have a technical meaning outside of its ordinary connotation. The term is not defined in the statute, suggesting there was no legislative intent for a specialized meaning, and none of our case law suggests that it has any technical legal meaning.[3] While Appellant believes the word needs further definition, he has not shown that to be the case. Therefore, it was within the jury's province, relying on its common experience, to apply its own understanding of the word, without the necessity of further instruction from the trial court.

## SUFFICIENCY OF THE EVIDENCE

### Standard of Review

[¶ 11] When a conviction is challenged on the basis of insufficiency of the evidence, we apply the following standard of review:

> [W]e must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When considering a claim of the sufficiency of the evidence, we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses.

*Mendoza v. State*, 2007 WY 26, ¶ 3, 151 P.3d 1112, 1113 (Wyo.2007).

### Discussion

[¶ 12] Appellant's sole contention here is that there was insufficient evidence to show that he threatened to use a drawn deadly weapon. Several officers testified that Appellant verbally threatened to shoot them if they continued their attempts to remove him from the shed. The jury, therefore, could have concluded that Appellant threatened the officers. As to a deadly weapon, we have long held that an unloaded gun qualifies as a deadly weapon for the purposes of Wyo. Stat. Ann. § 6–2–502(a)(iii). *Dike v. State*, 990 P.2d 1012, 1019 (Wyo. 1999). That leaves only the issue of whether a reasonable jury could have concluded, beyond a reasonable doubt, that the rifle was "drawn."

[¶ 13] As discussed above, it was the jury's task to apply the common meaning of the word "drawn" to the situation at hand. *Webster's International Dictionary* defines "draw" as follows:[4] "[verb]1 ... f: to remove (a weapon) from a sheath <now ˝your swords and fall to it>." *Webster's Third New International Dictionary* 686 (1993). A more recent abridged version of *Webster's* dictionary defines "draw" as "*vt.* ... 5a. To take or pull out for use, as a weapon ... *vi.* ... 4. To pull out a weapon for use." *Webster's II New College Dictionary* 350–51 (3d ed.2005). Similarly, *Merriam–Webster's Collegiate Dictionary* 352 (10th ed.1995) defines "draw" in this context as "to bring out a weapon (*drew*, aimed, and fired)." We are satisfied from reviewing these sources that the common meaning of "drawn" does not contain the element of aiming or pointing, and the district court did not err in declining to instruct the jury that the word had such a meaning.

[¶ 14] We have previously found that sufficient evidence existed to uphold a conviction for aggravated assault where a defendant did

---

3. For the same reason, we have declined to require trial courts to define the word "threaten" in the same statute. *Streitmatter v. State*, 981 P.2d 921, 925–26 (Wyo.1999); *Cardenas v. State*, 811 P.2d 989, 996 (Wyo.1991).

4. *Webster's International Dictionary* dedicates approximately two full columns of text to the various definitions of the word "draw." We have included only the meaning the jury could reasonably have applied here.

not point the gun at his victim. In *Hart v. State*, 2003 WY 12, ¶ 6, 62 P.3d 566, 569 (Wyo.2003), the defendant "pulled the gun out of the back of his pants and showed it to [the victim] by holding it straight up in the air, pointing toward the sky, directly in front of a window." We held that a jury could have found that this constituted a threat to use a drawn deadly weapon, regardless of the fact that the weapon was never pointed or aimed at the victim in that case. *Id.*, ¶ 10, at 569–570.

[¶ 15] Here, Appellant contends that the jury could not reasonably conclude beyond a reasonable doubt that he had drawn the rifle, since no one saw him with it in his hand. The jury was presented with evidence, however, in the form of officer testimony, that Appellant verbally threatened to shoot the officers. It was also presented with testimony from Nancy Houston, the other resident of the home where the standoff took place, that the rifle in question had been on the floor in the shed, behind other objects, two days before Appellant's return. The officers on the scene testified that when they entered the shed where Appellant was barricaded, they found the rifle in the open, in close proximity to the cell phone Appellant had been using, the note he had written, and the closed circuit television monitor Appellant had been watching throughout the standoff. Those facts, combined with Appellant's statement that he was going to shoot the officers, allowed for the reasonable inference that Appellant had removed the rifle from its previous location and had placed it in a position for use when he made the threat. Those facts are sufficient to show that the rifle was "drawn."

[¶ 16] Appellant's argument that he cannot be convicted because no one saw him with the rifle must fail. The law simply does not require such direct proof. No one could have seen the rifle during the standoff because Appellant was in a windowless shed during the entire confrontation. The jury could reasonably have inferred, from the circumstantial evidence presented, that the deadly weapon found with Appellant's possessions at the end of the standoff had been "drawn" while the police were under threat.

## CONCLUSION

[¶ 17] The district court properly refused Appellant's instruction defining the word "drawn" in the aggravated assault statute, and there was sufficient evidence to support Appellant's conviction under Wyo. Stat. Ann. § 6-2-502(a)(iii). The district court's judgment and sentence is affirmed.