# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 59

APRIL TERM, A.D. 2024

June 7, 2024

KAMIE LYNN HULTBERG,

Appellant
(Defendant),

v.

S-23-0252

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable James Michael Causey, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Appellant, Kamie Hultberg, challenges her conviction for felony child abuse in violation of Wyoming Statute § 6-2-503(b)(i) (LexisNexis 2021). She argues the evidence was insufficient to prove she committed this offense. We affirm.

## ISSUE

[¶2]    Appellant presents a single issue which we rephrase as follows: Did the State present sufficient evidence to convict Ms. Hultberg of felony child abuse?

## FACTS

[¶3]    On November 13, 2022, Appellant went to play poker. After playing poker, Appellant went to the bar where she works and had a few drinks. Her 13-year-old daughter, AH, was babysitting her two younger sisters that evening. AH obtained Appellant's permission to go to AH's boyfriend's house with her siblings, but she was supposed to be home by 9:00 p.m. at the latest.

[¶4]    Appellant arrived home around 11:00 p.m. and discovered the children were not there. Due to her intoxication, Appellant called her coworker, Carrie White, and asked her to help look for the children. Ms. White drove Appellant to AH's boyfriend's home. AH's boyfriend's mother informed Appellant the children were not there, but she believed she knew where they were. The three women drove to another location approximately a block and a half away, where a friend of AH's boyfriend lived. When they arrived, they found AH and her siblings sitting in a car with her boyfriend and his friend.

[¶5]    Ms. White went up to the vehicle to retrieve AH and her sisters. As Ms. White opened the car door, Appellant could see vape smoke rolling out of the vehicle. The children got into Ms. White's vehicle, and after dropping AH's boyfriend's mother off, they headed back to Appellant's home.

[¶6]    Appellant and AH argued on the way home. Appellant yelled at AH and told her she should have been home. When they arrived at Appellant's home, Ms. White took the younger children inside while Appellant and AH remained in the vehicle. The argument between Appellant and AH continued to escalate, and Appellant grabbed AH's hair while AH sat in the backseat of the car. When Ms. White returned to the vehicle, she physically intervened and got Appellant's hands off AH. Ms. White and AH went into the house while Appellant stayed in the vehicle.

[¶7]    Ms. White attempted to calm everyone down. Appellant came into the house and told Ms. White to leave. After leaving the residence, Ms. White called 911 and informed the dispatcher Appellant was "beating her children." She stated Appellant had pulled AH's

1

hair and yanked her down, and although Ms. White had tried to intervene, Appellant continued to grab AH, pull her hair, and shake her.

[¶8]    After Ms. White left the residence, Appellant went into AH's room and continued to yell at her.  Appellant then straddled AH, pinned her arms to her side, and repeatedly struck AH's head and face with her fist.

[¶9]    When the officers arrived, they were unable to see any obvious signs of physical injury to AH.  However, they did locate a clump of hair in the hallway outside of AH's bedroom, which was consistent with AH's hair.  The officers had seen similar clumps of hair in other domestic violence incidents where the victim's hair had been pulled out.  AH told the officers Appellant's blows caused her pain, which she rated as being a five on a scale from one to ten.

[¶10]  AH went to see the school nurse the following day.  The school nurse sent for the school resource officer and asked him to take photographs of AH's face.  The nurse and the officer observed a red mark, some discoloration on AH's face, and swelling above one of her eyebrows.

[¶11]  Appellant was charged with one count of child abuse in violation of Wyoming Statute § 6-2-503(b)(i).  After a three-day trial, the jury convicted Appellant of this charge.  The district court sentenced Appellant to four to five years in prison, suspended in favor of four years of supervised probation.  This appeal timely followed.

## STANDARD OF REVIEW

[¶12]  The standard of review we apply when reviewing a sufficiency of the evidence claim is well established:

> [W]e assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence.  After examining the State's evidence, whether direct or circumstantial, we do not substitute our judgment for that of [the] jury, but instead, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.  Furthermore, we defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt.  Ultimately, our standard of review is not whether the evidence is sufficient for us, but whether, when viewed

favorably to the state, it was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt.

*Kobielusz v. State*, 2024 WY 10, ¶ 22, 541 P.3d 1101, 1107–08 (Wyo. 2024) (quoting *Snyder v. State*, 2021 WY 108, ¶ 50, 496 P.3d 1239, 1253 (Wyo. 2021)) (internal quotation marks and citations omitted).

## **DISCUSSION**

[¶13]  To convict Appellant of child abuse, the State had to prove she was a person who was responsible for a child's welfare, and she intentionally or recklessly inflicted physical injury on that child. Wyo. Stat. Ann. § 6-2-503(b)(i).  Physical injury is defined as: "any harm to a child including but not limited to disfigurement, impairment of any bodily organ, skin bruising if greater in magnitude than minor bruising associated with reasonable corporal punishment, bleeding, burns, fracture of any bone, subdural hematoma or substantial malnutrition[,]" "excluding reasonable corporal punishment." Wyo. Stat. Ann. § 14-3-202(a)(ii)(B) (LexisNexis 2021); Wyo. Stat. Ann. § 6-2-503(b)(i).  We must determine if the evidence was sufficient to allow the jury to conclude the harm Appellant inflicted upon AH was the type prohibited by the statute, and that harm was not the result of reasonable corporal punishment.

### **A. Do the harms Appellant inflicted upon AH fall into the same class as those listed in the statute?**

[¶14]  Appellant claims the State failed to establish AH sustained a physical injury as defined by Wyoming Statutes §§ 6-2-503(b)(i) and 14-3-202(a)(ii)(B).  The State asserts it proved Appellant inflicted a physical injury on AH by pulling out her hair and repeatedly punching her in the head and face, and this injury was demonstrated through the clump of hair found outside AH's bedroom and the swelling and discoloration on AH's face.

[¶15]  "We have seldom been required to consider the scope of the physical injury definition under the child abuse statute." *Sanderson v. State*, 2007 WY 127, ¶ 44, 165 P.3d 83, 95 (Wyo. 2007).  In *Sanderson*, we found the child abuse statute does not apply to "any harm," no matter how small. *Id.* at ¶ 45, 165 P.3d at 95.  Instead, to fall under the statute's "catch-all description," the harm must be "the same general kind or class as those specifically listed" in the statute. *Id.* (quoting *RME Petroleum Co. v. Wyo. Dept. of Revenue*, 2007 WY 16, ¶ 46, 150 P.3d 673, 690 (Wyo. 2007)).  We also found "the nature of the harms articulated in the statute illustrates that the legislature did not intend only permanent injury to be unlawful . . . .  [T]he statute also includes injuries that may heal over time. Several of the injuries listed, notably bleeding and bruising, may later be completely undetectable." *Id.* at ¶ 48, 165 P.3d at 96 (internal citation omitted).  We must determine whether the jury could reasonably conclude the harms Appellant inflicted on

3

AH fall into the same class as those listed in Wyoming Statutes §§ 6-2-503(b)(i) and 14-3-202(a)(ii)(B).

[¶16] In this case, although the officers did not observe any obvious signs of physical injury when they arrived at Appellant's home in response to the 911 call, they did find a clump of hair that was consistent with Appellant having pulled out AH's hair. In addition, when AH went to the school nurse the next day, the nurse and the school resource officer observed a red mark, some discoloration on AH's face, and swelling above one of her eyebrows.

[¶17] Other jurisdictions have found pulling a child's hair can sustain a finding of child abuse. The Eighth Circuit recently found the severe pain caused by pulling a child's hair constituted child abuse. *United States v. Keepseagle*, 30 F.4th 802, 814–15 (8th Cir. 2022). Similarly, the District of Columbia Court of Appeals sustained a finding of child abuse based on a defendant "dragg[ing] an adolescent child by her hair with enough force to pull her hair out from its roots leaving her scalp exposed." *In re GH*, 797 A.2d 679, 685 (D.C. 2002). Likewise, the Ohio Court of Appeals sustained a finding of child abuse based on repeated incidents of slapping, shoving, grabbing, shaking, and hair pulling. *In re Kimble*, No. 99 517 CA, 2002 WL 1065977, at *10 (Ohio Ct. App. May 15, 2002). In addition, the Virginia Court of Appeals found a defendant committed child abuse by "pull[ing] a nickel sized plug of hair from his daughter's head." *Turner v. Jackson*, 417 S.E.2d 881, 887–88 (Va. Ct. App. 1992). Furthermore, the Illinois Court of Appeals found a defendant guilty of child abuse for hitting a child with a plastic baseball bat and a belt, kicking her, throwing liquor in her face, and pulling her hair. *People v. Sambo*, 554 N.E.2d 1080, (Ill. App. Ct. 1990).

[¶18] In this case, the evidence was sufficient to allow the jury to reasonably conclude Appellant pulled out a chunk of AH's hair and caused a red mark, facial discoloration, and swelling by repeatedly punching AH in the head and face. Although these harms are not specifically listed in the definition of physical injury, they are in the same general kind or class as those specifically listed in the statute. *See* Wyo. Stat. Ann. § 14-3-202(a)(ii)(B); Wyo. Stat. Ann. § 6-2-503(b)(i). Therefore, they fall into the statute's catch-all description of physical injury.

## B. Were the harms Appellant inflicted on AH the result of reasonable corporal punishment?

[¶19] Under Wyoming Statute § 6-2-503(b)(i), the State had to show the missing chunk of hair, red mark, facial discoloration, and swelling Appellant inflicted on AH were not the result of reasonable corporal punishment. Appellant asserts the State failed to prove her actions fell outside reasonable corporal punishment. She claims she was acting in response to a very specific and recent violation of house rules, which appropriately resulted in corporal punishment. The State asserts the jury could reasonably conclude Appellant was

not engaged in reasonable corporal punishment, but instead had lost control of her emotions and was inflicting her wrath on a defenseless child.

[¶20] Long ago we recognized parents have a common law right to "exercise such control and restraint and to adopt such disciplinary measures as will enable them to discharge their parental duty . . . ." *Keser v. State*, 706 P.2d 263, 269 (Wyo. 1985) (quoting *State v. Spiegel*, 270 P. 1064, 1064 (Wyo. 1928)). However, discipline must be performed "with parental affection, must not exceed the bounds of moderation, and must not be cruel or merciless, and . . . any act of punishment in excess of such limits is unlawful." *Id.* (quoting *Spiegel*, 270 P. at 1065). The determination of whether a parent's actions amount to reasonable corporal punishment is a question for the jury. "This is a determination that jurors, many of whom are parents, and all of whom have been children, are uniquely qualified to make." *Andersen v. State*, 2014 WY 88, ¶ 26, 330 P.3d 256, 263 (Wyo. 2014).

[¶21] Here, by finding Appellant guilty, the jury determined she was not engaged in the administration of reasonable corporal punishment. The evidence is sufficient to support that finding. Appellant admitted she was angry. Appellant's testimony showed her actions were not a reasonable response to a specific violation of house rules. She testified she can usually "handle the situation" or "blow the situation off," but "there was so much more to it this night." Appellant stated:

> [I]t's not even that she wasn't home or that -- the vaping; it wasn't any of that. It was that she wasn't taking any kind of responsibility and was arguing to me and talking to me very disrespectfully on top of all that."

Appellant further testified:

> [APPELLANT:] I didn't hit her because she was late, either. Like I said, I didn't go grab her out of the car; it -- it snowballed into something more.
>
> Q. Now, why did you hit her?
>
> A. I wanted to slap her mouth so she would quit arguing with me and just take a moment to maybe think that what she had done that night was wrong.

Appellant testified she was "trying to finish the situation," and striking AH solved the problem because "[s]he quit arguing with me." The jury could reasonably conclude pulling AH's hair, straddling her, pinning her arms down, and repeatedly striking her in the face "did not represent a method of correction or a reasonable means [of] obtaining the child's

5

attention and compliance, but rather represented an adult who had lost control of [her] own responses." *State v. Treadway*, 103 A.3d 1026, 1030 (Me. 2014).

[¶22]   The evidence supports the jury's reasonable conclusion Appellant inflicted physical injuries on AH that were not the result of reasonable corporal punishment.   The State presented sufficient evidence to convict Appellant of child abuse.

## **CONCLUSION**

[¶23]   The record supports the jury's reasonable conclusion Appellant inflicted physical injuries on AH that were not the result of reasonable corporal punishment.   Appellant's conviction for child abuse is affirmed.