# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 103

APRIL TERM, A.D. 2024

September 26, 2024

SANTOS MICHAEL MUNOZ, JR.,

Appellant
(Defendant),

v.

S-24-0066

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Office of Public Defender: Ryan R. Roden*, Interim Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.

* An Order Substituting Ryan Roden for Diane Lozano was entered on August 9, 2024.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]   A jury convicted Santos Munoz, Jr., of theft, felon in possession of a firearm, and eluding.  He appeals only his felon in possession of a firearm conviction, claiming the State presented insufficient evidence to convict him of that charge.  We affirm.

## ISSUE

[¶2]   The issue in this case is: Did the State present sufficient evidence to convict Mr. Munoz of being a felon in possession of a firearm?

## FACTS

[¶3]   Early on the morning of February 5, 2023, Joseph Perez parked his 2021 Honda Civic in the parking lot of the donut shop on Central Avenue in Cheyenne, Wyoming.  He had purchased the vehicle the previous day.  He either left the key fob in the vehicle or dropped it on his way into the donut shop.  When he exited the donut shop a few minutes later, the vehicle was gone.  Mr. Perez called law enforcement to report the theft.

[¶4]   Mr. Perez had an application on his phone that allowed him to track the vehicle's location.  Mr. Perez and his friend found the vehicle parked a couple of blocks away from the donut shop in a residential neighborhood.  Mr. Perez contacted a nearby locksmith, who was able to unlock the vehicle.  Mr. Perez could not start the vehicle without a key fob, and the locksmith did not have the correct replacement key fob in stock to make a new one.  Mr. Perez left the vehicle where it was parked while he attempted to obtain a replacement key fob.  Before leaving, Mr. Perez looked in the vehicle and discovered the 9 mm Springfield Hellcat handgun he kept in the vehicle's glovebox was missing.

[¶5]   Less than 30 minutes later, Mr. Perez received an alert from the application on his phone that the vehicle was moving again.  Mr. Perez and his friend drove around attempting to follow the vehicle, while calling 911 to give law enforcement updates regarding the vehicle's location.  Although he could not get a good look at the person who was driving the vehicle, Mr. Perez could tell the driver was wearing a beanie.

[¶6]   Officer Mark Ehlman encountered the vehicle at the intersection of Morrie and 20th Street and attempted to initiate a traffic stop.  After appearing as if he was going to pull over, the driver of the vehicle took off and fled the scene.  Officer Ehlman pursued the vehicle.  The driver ran a stop sign, drove the vehicle in excess of 60 mph in the wrong direction down a one-way street, and crashed into a tree on 19th Street.  The driver then exited the vehicle, dropped something on the ground, slipped and fell, got up, and took off running.  After a brief pursuit, law enforcement apprehended the driver, who was later identified as Mr. Munoz.  Officers searched Mr. Munoz and found the key fob for Mr. Perez's vehicle on his person.  When other officers arrived at the scene of the crash, they

1

found Mr. Perez's handgun and a gray beanie on the ground outside the driver's side of the crashed vehicle near the location where Mr. Munoz dropped one or more items as he got out of the vehicle.

[¶7]    The State charged Mr. Munoz with felony theft, felon in possession of a firearm, and felony eluding. After a one-day jury trial, the jury found him guilty of all three charges. The district court sentenced Mr. Munoz to four-to-six years in prison on the theft charge, to be served concurrently to a sentence of two-to-three years in prison on the felon in possession of a firearm charge, and consecutively to a sentence of 338 days in jail for the eluding charge. The district court gave Mr. Munoz credit for the 338 days he had already served against his eluding sentence. This appeal timely followed.

## STANDARD OF REVIEW

[¶8]    When reviewing whether the State presented sufficient evidence to the jury to sustain a conviction,

> [w]e assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. After examining the State's evidence, whether direct or circumstantial, we do not substitute our judgment for that of the jury, but instead, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. Furthermore, we defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt. Ultimately, our standard of review is not whether the evidence is sufficient for us, but whether, when viewed favorably to the state, it was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt.

*Hultberg v. State*, 2024 WY 59, ¶ 12, 549 P.3d 759, 761 (Wyo. 2024) (quoting *Kobielusz v. State*, 2024 WY 10, ¶ 22, 541 P.3d 1101, 1107–08 (Wyo. 2024)).

## DISCUSSION

[¶9]    The State charged Mr. Munoz with violating Wyoming Statute § 6-8-102(a) (LexisNexis 2021), which states:

> Any person who has previously pleaded guilty to or been convicted of committing or attempting to commit a violent

2

felony, and has not been pardoned or has not had the person's rights restored pursuant to W.S. 7-13-105(a) or (f) and who uses or knowingly possesses any firearm is guilty of a felony punishable by imprisonment for not more than three (3) years, a fine of not more than five thousand dollars ($5,000.00), or both.

[¶10] For the purposes of this statute, possession means to have "physical control or custody of the weapon, or immediate access to it." *McInturff v. State*, 808 P.2d 190, 195–96 (Wyo. 1991) (citations omitted). "[P]ossession of a weapon by persons convicted of violent felonies must be knowing to be unlawful." *Id.* at 196 (citing *Carfield v. State*, 649 P.2d 865, 871 (Wyo. 1982)). "'Knowingly' means 'with awareness, deliberateness, or intention' as distinguished from inadvertently or involuntarily." *Reyes v. State*, 2022 WY 41, ¶ 25, 505 P.3d 1264, 1270 (Wyo. 2022) (quoting *Butz v. State*, 2007 WY 152, ¶ 20, 167 P.3d 650, 655 (Wyo. 2007)).

[¶11] Mr. Munoz does not contest that he is a person who has previously been convicted of committing a violent felony, and he stipulated to that fact at trial. Instead, he asserts the State failed to present any evidence he knowingly possessed the handgun. While he concedes the evidence showed he knowingly possessed the vehicle, he argues "it is an illogical leap" to conclude he knew there was a gun in the vehicle. Because no one testified they saw him "handling the gun," he asserts there was no evidence he independently possessed the firearm apart from it "merely being in a vehicle" he took. He claims the handgun was simply on the ground with the rest of the contents of the vehicle as part of the debris field from the crash.

[¶12] Mr. Munoz's argument is similar to the one we rejected in *Ewing v. State*, 2007 WY 78, 157 P.3d 943 (Wyo. 2007). In *Ewing*, the State charged the defendant with aggravated assault and battery after he barricaded himself in a shed and threatened to shoot anyone who tried to open the door. *Id.* at ¶¶ 4–5, 157 P.3d at 944–45. No one could see into the shed. *Id.* at ¶ 16, 157 P.3d at 947. When law enforcement was finally able to remove the defendant from the shed, they found a rifle on a shelf, next to the closed-circuit television equipment the defendant had been using to monitor activity outside of the shed. *Id.* at ¶ 4, 157 P.3d at 944–45. The defendant's significant other testified she had last seen the rifle on the floor of the shed two days before the incident "behind a bunch of things." *Id.*, 157 P.3d at 945. The defendant argued he could not be convicted of aggravated assault because no one had seen the rifle in his hands, so the State could not prove he had "drawn" a deadly weapon as required by Wyoming Statute § 6-2-502 (LexisNexis 2003). *Id.* at ¶ 15, 157 P.3d at 947. We rejected this argument and stated:

> [The defendant's] argument that he cannot be convicted because no one saw him with the rifle must fail. The law simply does not require such direct proof. No one could have

3

seen the rifle during the standoff because [the defendant] was in a windowless shed during the entire confrontation. The jury could reasonably have inferred, from the circumstantial evidence presented, that the deadly weapon found with [the defendant's] possessions at the end of the standoff had been "drawn" while the police were under threat.

*Id.* at ¶ 16, 157 P.3d at 947. We concluded the State presented sufficient evidence to sustain the conviction because the facts presented at trial "allowed for the reasonable inference that [the defendant] had removed the rifle from its previous location and had placed it in a position for use when he made the threat." *Id.* at ¶ 15, 157 P.3d at 947.

[¶13] Here, as in *Ewing*, the State presented circumstantial evidence from which a rational jury could infer Mr. Munoz knowingly possessed a firearm. Mr. Perez testified he kept the handgun in the glovebox of the vehicle. He further testified the handgun was missing from the glovebox when he found the vehicle in the residential area a few blocks away after it was initially taken from the donut shop. The jury saw Officer Ehlman's dashcam video, which showed Mr. Munoz dropping something as he exited the vehicle after the crash. Officers found the handgun in the vicinity of the object(s) Mr. Munoz dropped. This evidence allowed the jury to make the reasonable inference that Mr. Munoz removed the handgun from its previous location—the glovebox—and "with awareness, deliberateness, or intention" had it in his physical control or had immediate access to it at some point in time before the crash. *See Ewing*, 2007 WY 78, ¶ 15, 157 P.3d at 947; *Reyes*, 2022 WY 41, ¶ 25, 505 P.3d at 1270 (quoting *Butz*, 2007 WY 152, ¶ 20, 167 P.3d at 655). Direct proof that Mr. Munoz handled the weapon was not required. *Ewing*, ¶ 16, 157 P.3d at 947. A rational jury could have reasonably concluded the State proved each of the elements of this charge beyond a reasonable doubt. *Hultberg*, 2024 WY 59, ¶ 12, 549 P.3d at 761 (quoting *Kobielusz*, 2024 WY 10, ¶ 22, 541 P.3d at 1107–08). The State presented sufficient evidence to sustain Mr. Munoz's conviction for being a felon in possession of a firearm.

## CONCLUSION

[¶14] Circumstantial evidence supports the jury's reasonable inference that Mr. Munoz knowingly possessed the firearm. The State presented sufficient evidence to sustain Mr. Munoz's conviction for being a felon in possession of a firearm in violation of Wyoming Statute § 6-8-102(a). Affirmed.

4