# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 116

**OCTOBER TERM, A.D. 2025**

**October 28, 2025**

JOEL LEE WILSON,

Appellant
(Defendant),

v.

S-25-0085

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Public Defender, Bennett Law Group, P.C., Laramie, Wyoming.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, JJ., and KIRVEN, DJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KIRVEN, D.J.**

[¶1]    Joel Lee Wilson was charged with one count of aggravated burglary (Count I); one count of robbery (Count II); one count of breach of peace (Count III); one count of property destruction (Count IV); and one count of unlawful possession of controlled substance, third or subsequent offense (Count V). A jury found him guilty on all counts. Mr. Wilson appeals the convictions, arguing the State did not produce sufficient evidence to prove intent to commit theft required in Counts I and II. We affirm.

## ISSUE

[¶2]    Mr. Wilson presents a single issue on appeal which we rephrase as: Whether sufficient evidence supported the jury's finding that Mr. Wilson entered the Wolf residence with intent to commit theft, as required for convictions of aggravated burglary and robbery.

## FACTS

[¶3]    On November 18, 2023, at approximately 10:50 a.m., the Casper Police Department was dispatched to a home invasion in Casper, Wyoming. The home was occupied by Alexander Wolf, a Natrona County Sheriff's Deputy, his pregnant wife, and their young daughter. Mr. Wolf had just finished an overnight shift at the county jail and was sleeping in the couple's bedroom when his wife heard knocking and scratching at the front door. Utilizing the doorbell camera, Ms. Wolf observed two men standing at the front door later identified as Mr. Wilson and Mr. Daniel Hemmer. Ms. Wolf told her daughter to wake up Mr. Wolf. The knocking and scratching lasted for several minutes before Mr. Wilson forcibly "shouldered" the front door causing it to slam open damaging the door jamb.

[¶4]    Mr. Wilson and Mr. Hemmer entered the home. Mr. Wilson entered first. Upon entering the home, Mr. Wilson confronted Ms. Wolf, stating "what's up mother f***er," then proceeded to the couple's bedroom. Mr. Hemmer hesitated and looked around the home as if he was in the wrong place.

[¶5]    Ms. Wolf heard her husband and Mr. Wilson verbally arguing in the bedroom. She followed Mr. Hemmer to the bedroom where she saw her husband and Mr. Wilson "wrestling and throwing punches at each other." Mr. Wolf described what happened as a fight for Mr. Wolf's life. Mr. Wolf sustained injuries to his face and knee. During the confrontation, Mr. Hemmer approached the Wolfs' daughter. Ms. Wolf intervened between her daughter and Mr. Hemmer before grabbing her husband's handgun from the nightstand. Ms. Wolf pointed the gun at Mr. Hemmer causing him to flee the home. The altercation between Mr. Wolf and Mr. Wilson continued in the bedroom before spilling out into the living room. Mr. Wilson eventually left the home through the door he had forcibly opened.

1

[¶6]    Following an investigation, the State charged Mr. Wilson with one count of aggravated burglary, one count of robbery, and three other offenses. Mr. Wilson pled not guilty to the offenses and a jury trial commenced on September 23, 2024, in Natrona County District Court.

[¶7]    At trial, Mr. Wilson contended that he did not have the intent to commit theft when he entered the Wolfs' home. The State presented evidence of Facebook messages between Mr. Wilson and Mr. Hemmer, along with statements from Mr. Wilson during a subsequent police interview, to establish Mr. Wilson's intent to commit theft. Mr. Hemmer and Mr. Wilson exchanged the following Facebook messages in the hours leading up to the home invasion:

| | |
|---|---|
| Hemmer: | Look I don't like what you did, but I respect that you only went for one thing. There is an opportunity for you to make money do you want it or not. |
| Hemmer: | Trust me it takes a certain someone and if I didn't think everyone else were b****es I'd turn to someone else its tonight or not. |
| Hemmer: | Hold up a lot of talk of high police presents |
| Hemmer: | Wanna serve someone |
| Hemmer: | Tell me ur ready |
| Wilson: | I'm moving toward you now. |
| Hemmer: | Cool. |

The messages were admitted into evidence and published to the jury during trial. The evidence presented at trial also showed that Mr. Wilson and Mr. Hemmer exchanged audio calls in between the messages.

[¶8]    Detective Tiffany Elhart interviewed Mr. Wilson on November 19, 2023. Detective Elhart testified at trial regarding her interview with Mr. Wilson following his arrest. Mr. Wilson explained that he went to the Wolfs' home to assist Mr. Hemmer with a "debt" and to "collect dumbass sh*t."

[¶9]    At the close of the State's case, Mr. Wilson motioned for a judgment of acquittal pursuant to Rule 29 of the Wyoming Rules of Criminal Procedure. Mr. Wilson focused on the necessary elements of both aggravated burglary and robbery requiring proof of intent to commit theft inside of the residence. Mr. Wilson argued that the evidence during trial established that no property was taken from the residence and that the only evidence in support of an intent to commit theft was the text messages exchanged between Mr. Hemmer and Mr. Wilson. The trial court denied Mr. Wilson's motion for judgment of acquittal citing the evidence of Mr. Wilson's opportunity to make money, forceful entry into the home, and evidence demonstrating the two men appeared to enter the wrong house.

2

[¶10] Throughout the trial and during closing argument, Mr. Wilson focused on evidence that he was only present at the home to collect a debt and had no intention of committing theft inside of the Wolfs' home. Ultimately, the jury returned a verdict convicting Mr. Wilson of all charges. On February 28, 2025, Mr. Wilson was sentenced to a term of twenty-two (22) to twenty-five (25) years of incarceration on Count 1, aggravated burglary, and a term of nine (9) to ten (10) years of incarceration on Count 2, robbery. The court imposed the sentences concurrently.

## STANDARD OF REVIEW

[¶11] "When reviewing a claim that the evidence was insufficient to support a jury's verdict in a criminal trial, we decide whether the evidence could reasonably support the jury's verdict." *Huckins v. State*, 2020 WY 21, ¶ 10, 457 P.3d 1277, 1279 (Wyo. 2020) (citations omitted).

[¶12] A reviewing court will "assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Hanson v. State*, 2025 WY 80, ¶ 7, 571 P.3d 1282, 1285 (Wyo. 2025) (citing *Munoz v. State*, 2024 WY 103, ¶ 8, 556 P.3d 238, 240 (Wyo. 2024)). Ultimately, the reviewing court will "defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." *Id*.

## DISCUSSION

[¶13] With respect to Count I, aggravated burglary, Wyo. Stat. Ann. § 6-3-301(a) (LexisNexis 2025) provides in part: "A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured portion thereof, *with intent to commit theft or a felony therein*." (emphasis added). Regarding Count II, robbery, Wyo. Stat. Ann. § 6-2-401(a)(i) (LexisNexis 2025) states: "A person is guilty of robbery if in the course of committing a crime defined by W.S. Ann. § 6-3-402[1], he inflicts bodily injury upon another." Neither § 6-3-301(a) nor § 6-3-402 require direct proof that Mr. Wilson committed theft. *See Stroble v. State*, 2020 WY 158,

---

[1] Wyo. Stat. Ann. § 6-3-402 provides in pertinent part:
(a) A person is guilty of theft if he knowingly takes, obtains, procures, retains or exercises control over or makes an unauthorized transfer of an interest in the property of another person without authorization or by threat or by deception, or he receives, loans money by pawn or pledge on or disposes of the property of another person that he knew or reasonably should have known was stolen, and he:
(i) Intends to deprive the other person of the use or benefit of the property;
(ii) Knowingly uses, receives, conceals, abandons or disposes of the property in such manner as to deprive the other person of its use or benefit; or
(iii) Demands anything of value to which he has no legal claim as a condition for returning or otherwise restoring the property to the other person.

¶ 11, 478 P.3d 649, 652 (Wyo. 2020) (holding "[t]he state may meet its burden through reasonable inferences drawn from indirect or circumstantial evidence."). Rather, each statute requires proof beyond a reasonable doubt that Mr. Wilson intended to commit theft or was in the process of committing theft at the time of the alleged burglary and robbery.

[¶14]  Mr. Wilson does not dispute he entered the Wolfs' home without authority and engaged in a physical altercation with Mr. Wolf which resulted in injuries. Rather, Mr. Wilson contends the State presented insufficient and circumstantial evidence that failed to prove beyond a reasonable doubt that he intended to or was in the process of committing theft when he entered the home. Mr. Wilson emphasizes the lack of evidence establishing that he took any property, made any statements indicating his intent to steal, or otherwise demonstrated such intent. Additionally, he challenges the admission of Facebook messages between him and Mr. Hemmer, arguing they were improperly introduced as statements of a co-conspirator.

[¶15]  Whether the State presented direct or circumstantial evidence to support Mr. Wilson's convictions does not impact the validity of the verdicts. *Hanson*, ¶ 9,  571 P.3d at 1285 (citing *Whitmore v. State*, 2024 WY 81, ¶ 29, 552 P.3d 828, 834 (Wyo. 2024)). "Proof of each element of a crime can be [established] by either direct or circumstantial evidence, and circumstantial evidence includes inferences reasonably drawn from the evidence." *Berry v. State*, 2023 WY 75, ¶ 33, 533 P.3d 474, 484 (Wyo. 2023) (citations omitted). Additionally, "[b]ecause direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone." *Bittleston v. State*, 2019 WY 64, ¶ 17, 442 P.3d 1287, 1292 (Wyo. 2019) (quoting *Jones v. State*, 2019 WY 45, ¶ 28, 439 P.3d 753, 762 (Wyo. 2019)). "A jury may infer the defendant's intent to [commit theft] based on the totality of the circumstances reflected by the evidence." *Wiese v. State*, 2016 WY 72, ¶ 22, 375 P.3d 805, 809 (Wyo. 2016) (citing *Lane v. State*, 12 P.3d 1057, 1063 (Wyo. 2000)).

[¶16]  Mr. Wilson argues that the Facebook messages between him and Mr. Hemmer were improperly admitted as statements of co-conspirators and should not have been relied upon to establish intent to commit theft. *See* W.R.E. 801(d)(2)(E).[2] "We review a district court's ruling on the admissibility of evidence, including hearsay, for an abuse of discretion." *Thompson v. State*, 2021 WY 84, ¶ 15, 491 P.3d 1033, 1040 (Wyo. 2021) (citations omitted). "A district court abuses its discretion when it could not have reasonably concluded as it did." *Id*.

---

[2] (2) *Admission by Party-Opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

[¶17] Before admitting statements of a co-conspirator, the trial court must decide whether independent evidence exists showing "(1) a conspiracy existed, (2) the declarant and the defendant were involved in the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy." *Vlahos v. State*, 2003 WY 103, ¶ 29, 75 P.3d 628, 636 (Wyo. 2003) (quoting *Jandro v. State*, 781 P.2d 512, 521 (Wyo. 1989)).

[¶18] Mr. Wilson claims that the district court relied upon the Facebook messages themselves as evidence of the existence of a conspiracy. In overruling Mr. Wilson's objection to the Facebook messages, the district court stated as follows:

> [U]nder 801(d)(2)(e), a statement of a co-conspirator, during the course and in furtherance of the conspiracy, is not hearsay as long as three elements have been met. There must be evidence of a conspiracy, I think there's substantial evidence that these two agreed to go into that home. I don't think that's really in dispute. And that Mr. Hemmer and Mr. Wilson were both involved in that conspiracy. And the offered evidence here is showing that the statements were made immediately before they went to this house, in furtherance of the conspiracy, so I will allow this to be admitted into evidence.

[¶19] The district court did not improperly rely on the Facebook messages to find the existence of a conspiracy. Additionally, there is ample evidence in the record, outside of the Facebook messages, demonstrating an existing conspiracy in this case. The uncontroverted evidence, prior to admission of the messages, showed that the two men arrived at the Wolfs' house together, waited and knocked at the front door, and forcibly broke into the house when the door went unanswered. Multiple witnesses identified the men involved as Mr. Hemmer and Mr. Wilson. The admitted messages were exchanged just hours before the men broke into the Wolfs' home and demonstrate preparations and a coordinated plan to break into the home. The district court reasonably applied the *Vlahos* factors to conclude that the messages were admissible under WRE 801(d)(2)(E), and we do not find an abuse of discretion in their admission. The Facebook messages are part of the totality of the circumstances or evidence from which the jury could reasonably conclude that Mr. Wilson entered the home with the intent to commit theft.

[¶20] The record demonstrates that the State presented both direct and circumstantial evidence that can be properly relied upon to infer that Mr. Wilson entered the Wolfs' home with intent to commit theft. Evidence showed that Mr. Wilson broke into the front door of the home by "shouldering" the door open and immediately acted aggressively. Mr. Wilson cursed at occupants of the home and immediately proceeded to the bedroom and attacked Mr. Wolf. Evidence further showed that upon entering the home, Mr. Hemmer paused and looked around before proceeding to the bedroom. Giving the State the benefit of every reasonable inference, a jury could reasonably interpret these facts as evidence of Mr.

Wilson's intent to commit theft. A fact finder could reasonably infer a person who engaged in Facebook message exchanges described herein, then repeatedly knocked or scratched at the door, forcibly shouldered the door open, and verbally and physically assaulted the occupants, had the intent to unlawfully take property from the home.

[¶21] Evidence elicited by Mr. Wilson that neither he nor Mr. Hemmer removed any property from the Wolfs' home is of no consequence. We have previously held that the totality of the circumstances can demonstrate an intent to steal, as required to convict for burglary or robbery, even when nothing is removed from the property. *See Mirich v. State*, 593 P.2d 590, 593 (Wyo. 1979) (holding that "[t]he fact that nothing was taken from the building does not destroy the inference of intent to steal at the time of entry."). Our standard of review requires that we disregard any evidence favoring Mr. Wilson. The jury was not persuaded by this evidence in finding that Mr. Wilson was guilty of both robbery and burglary. "When a trier of fact draws reasonable inferences from the evidence before it, a defendant has little room to successfully complain to this Court that the trier of fact has drawn those inferences." *Id*.

## CONCLUSION

[¶22] The evidence is sufficient to reasonably support the jury's verdict Mr. Wilson entered the Wolfs' home with intent to, and was in the process of, committing theft. We affirm.