Martin Louis KRUCHECK,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–172.

Supreme Court of Wyoming.

July 9, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, and Denise Nau, Asst. Appellate Counsel (orally), Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John Renneisen and Mary B. Guthrie (orally), Sr. Asst. Attys. Gen., for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

Appellant was convicted of second degree murder in the death of John P. Welsh. In this appeal, in his words, he presents the following issues for our determination:

"1. Whether the Court failed to instruct on the applicable law regarding heat of passion in that it required the victim to be the provocateur of the passion.

"2. Whether expert testimony regarding the effect of stress and adrenalin on muscles and muscle reactions was admissible to aid the jury in determining Appellant's ability to control his reflex-reactions."

This case is before us a second time following a second trial to a jury. In the first trial appellant was convicted of second degree murder. The conviction was reversed for reasons not involved in this appeal, *Krucheck v. State*, Wyo., 671 P.2d 1222 (1983), and the case remanded to the district court for further proceedings. Upon the second trial appellant was again convicted of second degree murder.

John P. Welsh, the victim, married Dianne Welsh and a child was born of their marriage. They were divorced. Thereafter, Dianne Welsh at divers times lived with and was intimate with both her ex-husband, John P. Welsh, and appellant. John P. Welsh had moved to and was working and residing in Evanston, Wyoming. Three weeks prior to this incident Dianne moved from Casper to Evanston, Wyoming to reunite and live with John Welsh. Dianne testified that John Welsh was planning to transfer back to Casper, Wyoming; thus, one week prior to this incident, she returned to Casper to locate a place for them to live. While in Casper she stayed at the apartment of her brother-in-law, though she frequently saw appellant. On the day before this incident Dianne visited appellant at his home until late in the evening, returning to her brother-in-law's apartment prior to John Welsh's planned arrival that night. The next day appellant telephoned the apartment, learned that Dianne had spent the night with John Welsh, became angry, and went immediately to the apartment where he shot and killed John Welsh. Additional details concerning this homicide appear in the majority and dissenting opinions in *Krucheck v. State*, supra.

## VOLUNTARY MANSLAUGHTER INSTRUCTION

 Appellant, in the second trial, was charged with second degree murder as de-

fined by § 6-4-104, W.S.1977, which provided:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

The trial court instructed the jury also upon manslaughter as provided by § 6-4-107, W.S.1977:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

Manslaughter is a lesser offense included in the charge of second degree murder. See *Jahnke v. State*, Wyo., 682 P.2d 991 (1984); *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420, 34 A.L.R. 1477 (1924). Had the jury found that appellant acted upon a sudden heat of passion in killing John Welsh, his conviction would have been for the lesser-included offense, manslaughter, rather than for second degree murder.

Appellant agrees that a lesser-included-manslaughter instruction was proper. He complains, however, that the instruction given the jury was an incorrect statement of law in that it required that his heat of passion result from provocation by the victim. He states that his contact with the victim had been minimal and that he, therefore, harbored no ill feeling or anger aroused by the victim that might provoke him to act in a heat of passion. He states further that Dianne Welsh was the source of his heat of passion but that the instruction given did not inform the jury that this source of the heat of passion was sufficient, and thus the instruction precluded the finding of his crime to be voluntary manslaughter. The instruction complained of, Instruction No. 14, is as follows:

" 'Heat of passion' means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection and deliberation, and from passion rather than from judgment. *Such passion must have been aroused by provocation of the Defendant by the person who was killed.*" (Emphasis added.)

The same instruction was given in the first trial and complained of as error in the first appeal. Appellant contended there, as he contends here, that it should make no difference how the heat of passion is aroused as long as it is present. The majority of the court did not reach nor decide this issue in the first appeal. Justice Raper, however, correctly stated in his dissenting opinion that

"[a]ppellant's position is not sound. The general rule is that in order to reduce murder to manslaughter, the victim must have been the source of the defendant's provocation generating heat of passion." *Krucheck v. State*, supra, at 1231–1232.

■ Appellant contends in this case that, while in a heat of passion caused by anger directed toward Dianne Welsh, he shot and killed John Welsh and the crime should be no greater than manslaughter. As we have said, the source of appellant's provocation causing his heat of passion must have been the victim, John Welsh, to satisfy this element of manslaughter. Appellant's provocation was not aroused by John Welsh here; and, in our view, the killing of John Welsh under this scenario is the result either of accident or mistake, or a deliberate, intentional killing without heat of passion directed toward the victim John Welsh. Neither accident nor mistake nor deliberate, intentional killing makes out manslaughter.

■ In this case, appellant defended claiming the shooting and killing of John Welsh was an accident. If successful in this defense, he might have been acquitted. He testified that the anger which caused him to be in a heat of passion was directed toward Dianne Welsh; that John Welsh was not the cause of his anger or acting in

a heat of passion. He stated that when John Welsh opened the door, he said, "Hi, Zit Face," and hit him in the head with a gun he was holding. He then saw Dianne Welsh, their eyes locked, and while looking at Dianne Welsh, the gun in his hand went off accidentally killing John Welsh. Only appellant knew his state of mind. According to his testimony, the killing was an accident. But other witnesses testified that when John Welsh opened the door, appellant said, "Hi, Zit Face, I'm going to kill you"; that he then hit Welsh on the head with a gun and Welsh sunk to the floor; as Welsh was on the floor or attempting to get up, appellant looking directly at him, pointed the gun at him, and shot and killed him. Thus, the jury was left in the position of having to find either that what occurred was an accident or that appellant, without passion aroused by provocation on the part of John Welsh, deliberately leveled the gun at his body and shot and killed him. The jury, after hearing all of the evidence, opted for the latter version and returned a verdict of guilty of second degree murder; this verdict is amply supported by the evidence.

Upon this evidence, we question whether appellant was entitled to a manslaughter instruction at all. In *People v. Wax*, 75 Ill.App.2d 163, 220 N.E.2d 600 (1966), the adultery of defendant's wife and deceased occurred approximately three weeks before the killing. During the ensuing three weeks, defendant and his wife argued about the incident, defendant's resentment built against his wife, his anger grew and ultimately he shot deceased in the back, killing him. The court said:

> "We do not believe that passion engendered by the conduct of persons other than the decedent can be made into provocation [within the statute], and we must conclude that examination of the record discloses no evidence which authorizes the giving of an instruction as to manslaughter." Id., 220 N.E.2d at 610.

In *State v. Fowler*, Iowa, 268 N.W.2d 220 (1978), an ex-husband, returning his children to his former wife, shot and killed her boyfriend. The question was whether the provocation necessary to reduce the charge to manslaughter must be caused by the slain person. The court said:

> " '[T]he provocation must have been given by the person who was killed, except in those cases in which the wrong person was killed by accident or mistake, or deceased was present aiding and abetting the person causing the provocation.' " Id., at 224 (quoting from 40 C.J.S. Homicide § 53).

The court then noted that the killing was not the result of accident or mistake and that defendant's wife was not aiding and abetting the provocation of the defendant by the person who was killed.

We find the same to be true in this case. Appellant states John Welsh did not provoke him nor cause his anger or heat of passion. Neither did John Welsh aid and abet Dianne Welsh in provoking appellant for he was opposed to Dianne seeing or having anything to do with him. Whether the killing was the result of accident or mistake was fairly presented to the jury and resolved against appellant. He cannot now, under the theory he presented in his defense, complain that the jury found him guilty of second degree murder rather than manslaughter. As we have said, the instruction given was a correct statement of the law for the heat of passion, anger, rage, or hot blood "must have been entertained toward the person slain, and not toward another." 40 Am.Jur.2d Homicide § 57.

■ We have discussed the giving of Instruction No. 14, supra, because of its importance with respect to future litigation. Were it not for the importance of this question, we would have disposed of this issue adversely to appellant because there was no objection by appellant's counsel to this instruction prior to the time it was given to the jury. Appellant offered instructions which were refused by the court, but these offered instructions did not concern the law stated in the manslaughter instruction and, therefore, did not preserve his objection. We have repeatedly held

that, where no objection is made to an instruction, claimed error with respect to the instruction will not be considered on review unless it can be shown to be plain error. *Harries v. State,* Wyo., 650 P.2d 273 (1982); *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981). Plain error is not claimed in this appeal nor does it exist.

■ Instruction No. 14, supra, was a correct statement of the law in providing that to reduce murder to manslaughter defendant's heat of passion must result from provocation by the victim. Although appellant may not have been entitled upon the facts of this case to a manslaughter instruction, the giving of such instruction could only have been to his advantage for the jury might have found him guilty of a lesser charge. If it was error to give the instruction, it was harmless. Finally, since there was no objection to the instruction in any event and giving it was not plain error, it cannot be the basis for reversal. For the reasons stated, the giving of Instruction No. 14 was not error.

## REFUSAL OF EXPERT TESTIMONY

In this case appellant sought to introduce the testimony of Dr. Kahn, a medical doctor, and Dr. Leggett, a psychiatrist. When appellant sought to call Dr. Kahn as a witness, the State of Wyoming interposed an objection to his testifying. A recess was called, arguments presented, and appellant's counsel stated:

> "It is our position, Judge, that the testimony of either this doctor [Dr. Kahn] or in this case Dr. Leggett, because we are thinking of calling Dr. Leggett, a psychiatrist, is admissible regarding whether or not Mr. Krucheck intended to fire the revolver shot, which killed John Welsh."

The State's objection was sustained and the doctors were not permitted to testify.

■ It is not claimed that either doctor was present or had first-hand knowledge of the defendant's state of mind, and in this circumstance we have held:

> "A doctor who was not a witness to the crime and does not have first-hand knowledge of a defendant's state of mind

at the time of the offense, may not give his opinion as to what such mental state —intention—was. The state of mind of the accused is the proper subject for expert testimony when the defense is based on insanity but not when not based on such a plea." *Smith v. State,* Wyo., 564 P.2d 1194, 1200 (1977).

The candid admission of counsel that the proffered testimony concerned the question, "whether or not Mr. Krucheck intended to fire the revolver," established that the proposed testimony was inadmissible.

■ Appellant has suggested that the doctor would also testify to the effect of stress and excitement causing adrenalin to flow and resulting in a reaction or reflex causing the shooting. Reaction to stress and excitement is something experienced by all of mankind. It is a matter of common knowledge within the experience of lay persons and hardly a subject for expert testimony. We have said, to be admissible, the subject matter must be so distinctively related to some science, profession, business, or occupation as to be beyond the ken of the average layman. *Buhrle v. State,* Wyo., 627 P.2d 1374 (1981). See also, *Dyas v. United States,* 376 A.2d 827 (D.C.App. 1977), and McCormick on Evidence, Expert Testimony § 13 (3rd ed. 1984). The testimony was not admissible nor would it have been helpful to the jury in its consideration of this case. Rule 702, W.R.E., provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

This testimony would not have assisted the jury, *Buhrle v. State,* supra, and was properly refused.

■ At the time the court sustained an objection to the receipt of testimony from the medical doctor and psychiatrist, there was no offer of proof as to what their testimony would have been if received.

Where expert testimony is excluded, an offer of proof sufficient to apprise the court of the nature and substance of the excluded evidence is necessary to its consideration upon appeal. We have frequently stated:

" 'In the context of evidentiary rulings at trial, this court has long adhered to the doctrine that a sufficient offer of proof is necessary so that this court may be adequately apprised of the nature of the excluded testimony. *Padilla v. State,* Wyo., 601 P.2d 189 (1979); *Elliott v. State,* Wyo., 600 P.2d 1044 (1979); *Montez v. State,* Wyo., 573 P.2d 34 (1977); *Pack v. State,* Wyo., 571 P.2d 241 (1977); *State v. Goettina,* supra [61 Wyo. 420, 158 P.2d 865 (1945)]; *State v. Rouse,* [58] Wyo. 468, 134 P.2d 1116 (1943); *Jenkins v. State,* 22 Wyo. 34, 134 P. 260, reh. denied [22 Wyo. 34], 135 P. 749 (1913); and *McGinness v. State,* 4 Wyo. 115, 31 P. 978, reh. denied [4 Wyo. 115], 53 P. 492 (1893). The dual purpose of this requirement is to enable the trial court to be fully advised in the exercise of its discretion regarding the admission of evidence, and to enable the reviewing court to determine if prejudicial error resulted from the exclusion of the proffered testimony.' *Garcia v. State,* Wyo., 667 P.2d 1148, 1155 (1983)." *Jahnke v. State,* supra, at 1005.

We hold that the proferred testimony was correctly excluded in the first instance; that thereafter, irrespective of our holding, in the absence of an offer of proof neither the trial court nor this court could judge whether such exclusion was prejudicial error.

There being no error in the trial of this case, the judgment of conviction is affirmed.