# THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 24

OCTOBER TERM, A.D. 2025

February 23, 2026

MARK COLEMAN HELMS, II,

Appellant
(Defendant),

v.

S-25-0104

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*

*Office of Public Defender: Brandon T. Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel. Argument by Mr. Meerkreebs.*

*Representing Appellee:*

*Keith G. Kautz, Attorney General: Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.*

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ, and EAMES, DJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    A jury convicted Mark Coleman Helms, II, of second-degree murder.  On appeal, he claims the district court should have granted his motion to dismiss the prosecution on the grounds of self-defense immunity under Wyoming Statute § 6-2-602(f) (2023).  He also asserts the district court erred in providing an altered presumption of malice instruction and the evidence was insufficient to support his conviction.  We affirm.

## ISSUES

[¶2]    Mr. Helms raises four issues, which we rephrase as follows:

I.    Did the district court abuse its discretion when it precluded Dr. Holmberg from testifying at the motion to dismiss hearing?

II.    Did the district court err when it found Mr. Helms failed to establish a prima facie showing he was entitled to immunity from prosecution under Wyoming Statute § 6-2-602?

III.    Did the district court err when it gave an altered presumption of malice instruction that did not specifically indicate the State had the burden of proving malice beyond a reasonable doubt?

IV.    Was the evidence sufficient to support Mr. Helms's conviction for second-degree murder?

## FACTS

[¶3]    At approximately 11:49 p.m. on September 13, 2023, Mark Helms called 911 to report he had shot someone.  Mr. Helms told the 911 operator he "misunderstood a [] person," and he thought this person was breaking into his home, so he shot him.  Mr. Helms also told the 911 operator the person he shot was his cousin.

[¶4]    Officers were dispatched to Mr. Helms's home in Douglas, Wyoming.  After Mr. Helms and his wife, Grace,[1] exited the residence, they were secured in separate police vehicles. Officers then entered the home and found the victim, who was later identified as Nicholas Velazquez, lying on the floor just outside the master bedroom.  Mr. Velazquez's arms were elevated above his head, and his shirt was slightly raised.  A folded pocketknife

---

[1] We will refer to Grace Helms by her first name for clarity.

1

was found approximately a foot above Mr. Velazquez's head. It was later determined this knife belonged to Mr. Helms. Officers also found chewing tobacco on the floor around Mr. Velazquez's head. Mr. Helms informed the officers he had swept the chew out of Mr. Velazquez's mouth with his fingers while attempting to perform CPR. Officers located an AK-47 rifle lying on a chair in the master bedroom and one bullet casing on the floor near the window.

[¶5]   Mr. Helms spoke with the officers and told them he had invited his cousin, Mr. Velazquez, to come to his home to talk about getting his VA benefits sorted out. Mr. Velazquez brought beer and a fifth of whiskey. Mr. Helms took Mr. Velazquez on a tour of the home. Although Mr. Helms could remember going down into the basement and coming back upstairs, he could not remember what happened from the time they got back upstairs until he was performing CPR on Mr. Velazquez.

[¶6]   Over the course of the next several hours, Mr. Helms offered multiple theories for what might have happened once they reached the top of the stairs. He initially theorized Mr. Velazquez may have been suicidal and may have done something that intentionally led to the shooting. Mr. Helms claimed Mr. Velazquez had a mask or something covering his face and charged at him with something in his hand that could have been a weapon. Later, he said Mr. Velazquez was happier than he had been in years, and there was no hostility or negativity between them of any kind. At one point, he theorized it might have been Grace who fired the shot. After speaking with Grace on the phone, Mr. Helms focused on the theory he had seen someone in the house who he did not recognize, and the person he shot turned out to be Mr. Velazquez.

[¶7]   Mr. Helms also gave inconsistent details about what substances he consumed that night. Although he had previously stated he only consumed alcohol, he later admitted to smoking "legal [] weed" he had purchased from a store in town and taking a "gummy" that may have contained synthetic THC[2] just before Mr. Velazquez arrived. Mr. Helms agreed to submit to a portable breath test at the scene, which indicated his blood alcohol level was .225. He also agreed to submit a urine sample, which tested positive for THC.

[¶8]   The State charged Mr. Helms with one count of first-degree murder in violation of Wyoming Statute § 6-2-101(a) (2023). Mr. Helms entered pleas of not guilty and not guilty by reason of mental illness (NGMI). The district court ordered the Wyoming State Hospital to examine Mr. Helms pursuant to Wyoming Statute § 7-11-304 (2023). After performing her examination of Mr. Helms, the designated examiner, Dr. Elizabeth Donegan, concluded he did not meet the criteria for an NGMI defense because his "voluntary ingestion of more than one mind and mood altering substance . . . in proximity to the alleged incident would have impacted his functioning and contributed to behaviors and events during that time."

---

[2] THC, or tetrahydrocannabinol, is "the psychoactive component of the cannabis plant . . . ." Wyo. Stat. Ann. § 11-51-101(a)(vii) (2023).

Mr. Helms asked the district court to appoint a second evaluator pursuant to Wyoming Statute § 7-11-304(g). The district court granted this request, and Mr. Helms's chosen designated examiner, Dr. Trent Holmberg, concluded Mr. Helms did satisfy the criteria for an NGMI defense because Mr. Helms had a posttraumatic stress disorder (PTSD) flashback that was "primarily responsible for his brief dissociative reaction at the time of the shooting."

[¶9]    Mr. Helms filed a motion to dismiss the prosecution on the grounds of self-defense immunity under Wyoming Statute § 6-2-602(f), and he requested a hearing on his motion. The district court held a hearing on Mr. Helms's motion as required by *State v. John*, 2020 WY 46, ¶ 40, 460 P.3d 1122, 1134 (Wyo. 2020) (*John* Hearing). Mr. Helms asked to call Dr. Holmberg as a witness at the *John* Hearing to opine Mr. Helms was not "malingering or making up the lack of memory." The district court found Wyoming Statute § 7-11-304(h) prohibited designated examiners from testifying about anything other than a defendant's mental condition, and it precluded Dr. Holmberg from testifying.

[¶10]    After hearing the testimony of the witness called by Mr. Helms, the district court found it had no evidence "that would demonstrate directly or even by inference that there was reasonable force used by [Mr. Helms]." The district court found Mr. Helms failed to make a prima facie showing of self-defense and denied his motion to dismiss the prosecution.

[¶11]    The case proceeded to a five-day jury trial. The district court held a jury instruction conference on the third day of the trial. During this conference, the district court asked the parties if they objected to the proposed inference of malice instruction. This instruction was identical to one proposed by Mr. Helms, and it read:

> You are instructed that you may, but are not required to, infer malice from the use of a deadly weapon.

The instruction did not contain the sentence from the pattern jury instruction that informed the jury:

> The existence of malice, as well as each and every element of the charge of [INSERT NAME OF CRIME CHARGED], must be proven beyond a reasonable doubt.

W.Cr.P.J.I. 21.04C (2023). Neither party objected to the district court giving the instruction as proposed by Mr. Helms. During the jury instruction conference, both sides also requested lesser included offense instructions. The State asked the district court to instruct the jury on the elements of second-degree murder, and Mr. Helms asked for an instruction on the elements of voluntary manslaughter. The district court gave both lesser included offense instructions.

3

[¶12] The jury convicted Mr. Helms of second-degree murder. The district court sentenced Mr. Helms to not less than 48 nor more than 62 years in prison with credit for 516 days of presentence confinement. This appeal timely followed.

## **DISCUSSION**

### I. *Did the District Court Abuse its Discretion When it Precluded Dr. Holmberg from Testifying at the Motion to Dismiss Hearing?* [3]

[¶13] Mr. Helms asserts the district court wrongly construed Wyoming Statute § 7-11-304(h). He claims Dr. Holmberg's testimony was not outside of any statutory limits, and the admissibility of his testimony should have been governed by the Wyoming Rules of Evidence (W.R.E.) relating to the admission of an expert's testimony, such as W.R.E. 702, not Wyoming Statute § 7-11-304(h). The State contends the district court correctly ruled Dr. Holmberg's testimony was precluded by Wyoming Statute § 7-11-304(h), and alternatively, it would have been inappropriate to admit this testimony under W.R.E. 702 because it did not relate to any issue that was actually in dispute.

[¶14] We decline to adopt a blanket rule that Wyoming Statute § 7-11-304(h) prohibits a designated examiner from testifying at a *John* Hearing. However, in this case, the district court correctly found the statute prohibited Mr. Helms from introducing Dr. Holmberg's testimony for the proffered purpose. Wyoming Statute § 7-11-304(h) governs the use of statements made by a defendant during an NGMI evaluation. That subsection states:

> (h) Except as otherwise provided in this subsection, no statement made by the defendant in the course of any examination or treatment pursuant to this section and no information received by any person in the course thereof is admissible in evidence in any criminal proceeding on any issue other than that of **the mental condition of the defendant**. If the defendant testifies in his own behalf, any statement made by him in the course of any examination or treatment pursuant to this section may be admitted:
>
> > (i) For impeachment purposes; or

---

[3] Although Mr. Helms was evaluated by two designated examiners, he did not seek to call Dr. Donegan as a witness at the *John* Hearing. The State subpoenaed Dr. Donegan to testify in the event Dr. Holmberg was allowed to testify, but the district court quashed the subpoena to Dr. Donegan after it ruled the examiners were statutorily prohibited from testifying at the hearing. Mr. Helms only challenges the district court's decision to exclude Dr. Holmberg's testimony.

4

> (ii) As evidence in a criminal prosecution for perjury.

Wyo. Stat. Ann. § 7-11-304(h) (emphasis added). A defendant qualifies for an NGMI defense only if he suffers from one of "those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6-1-202(b)." Wyo. Stat. Ann. § 7-11-304(a). In this case, Mr. Helms was not seeking to call Dr. Holmberg at the *John* Hearing to testify that he suffered from such a "severely abnormal mental condition." Instead, his sole purpose for calling Dr. Holmberg was to establish Mr. Helms was not malingering or making up his lack of memory regarding the shooting. Because Mr. Helms was not calling Dr. Holmberg to testify regarding his "mental condition," the district court correctly found this testimony was impermissible under Wyoming Statute § 7-11-304(h).

[¶15] Further, this testimony was irrelevant to the issues in dispute at the *John* Hearing. Under W.R.E. 702(a), an expert's opinion is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue. . . ." Under W.R.E. 401, evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, Mr. Helms was tasked with establishing a prima facie case that he was entitled to immunity under Wyoming Statute § 6-2-602. *See John*, 2020 WY 46, ¶ 40, 460 P.3d at 1134. Under Wyoming Statute § 6-2-602(a) Mr. Helms had to establish a prima facie showing he used the amount of force that "a reasonable person in like circumstances would judge necessary to prevent an injury or loss, and no more," and that he had an "honest belief" danger existed whether that danger was "real or apparent."

[¶16] Dr. Holmberg's opinion regarding whether Mr. Helms was making up his loss of memory would not make it more or less probable that Mr. Helms had "an honest belief" that danger existed. His testimony would only establish Mr. Helms could not remember what he was feeling or thinking at the time of the shooting. Similarly, Dr. Holmberg's testimony would not assist the district court with determining whether the force used by Mr. Helms was the same that a reasonable person in like circumstances would have used. Because Dr. Holmberg's testimony would not have assisted the district court in determining any issues of fact, it would be irrelevant and inadmissible under W.R.E. 401 and 702. The district court did not abuse its discretion when it excluded Dr. Holmberg's testimony.

> II. ***Did the District Court Err When it Found Mr. Helms Failed to Establish a Prima Facie Showing He was Entitled to Immunity from Prosecution Under Wyoming Statute § 6-2-602?***

5

[¶17] In reviewing the district court's denial of Mr. Helms's motion to dismiss, we view the record in the light most favorable to the district court's decision. *John*, 2020 WY 46, ¶ 59, 460 P.3d at 1137–38 (citing *Dixon v. State*, 2019 WY 37, ¶ 17, 438 P.3d 216, 226 (Wyo. 2019)). The question of whether a defendant is entitled to have his prosecution dismissed under a self-defense immunity statute "is a mixed question of law and fact because to answer it one must determine the governing law as stated in the statute, find the operative facts, and apply the law to those facts." *Huckelby v. State*, 313 So. 3d 861, 865 (Fla. Dist. Ct. App. 2021) (citation omitted). "We defer to the district court's factual findings unless they are clearly erroneous." *McCalla v. State*, 2026 WY 18, ¶ 15, ___ P.3d ____, _____ (Wyo. 2026) (citing *Dixon*, ¶ 17, 438 P.3d at 226). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Davis v. State*, 2025 WY 120, ¶ 11, 578 P.3d 805, 809 (Wyo. 2025) (quoting *Marquez v. State,* 2025 WY 61, ¶ 47, 569 P.3d 356, 369 (Wyo. 2025)). "We defer to the district court because it had an opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions." *Id.* (citing *Hanson v. State*, 2025 WY 56, ¶ 23, 568 P.3d 1186, 1192 (Wyo. 2025)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *McCalla*, ¶ 15, ___ P.3d. at ___ (citing *Dixon*, ¶ 17, 438 P.3d at 226). However, "the ultimate question of whether the district court properly applied the statutory requirements, definitions, and presumptions under Wyoming Statute § 6-2-602 to the underlying facts is a question of law we review de novo." *Id.* (citing *John*, 2020 WY 46, ¶ 42, 460 P.3d at 1135).

[¶18] Mr. Helms asserts his written motion alleged a set of facts which entitled him to immunity under Wyoming Statute § 6-2-602(f). He claims two potential theories emerge from the circumstantial facts alleged and documented in his motion: 1) the two men got into an argument while in the basement, and the victim chased Mr. Helms up the stairs where he was shot while entering the master bedroom; or 2) Mr. Helms was suffering from a PTSD episode and did not know who he was shooting at the time the victim entered the bedroom. He argues he is immune from prosecution under either theory. The State asserts Mr. Helms offered only speculation in support of his motion, and the district court properly concluded Mr. Helms failed to present sufficient evidence the district court could rely on to determine whether each element of self-defense could be satisfied.

[¶19] Mr. Helms had the initial burden of establishing a prima facia case he was entitled to immunity. *See John*, 2020 WY 46, ¶ 40, 460 P.3d at 1134. "Prima facie means 'such evidence as is sufficient to establish a given fact, or the group or chain of facts and which if not rebutted or contradicted, will remain sufficient.'" *Schneider v. State*, 2022 WY 31, ¶ 15 n.2, 505 P.3d 591, 595 n.2 (Wyo. 2022) (quoting *Wyo. Bd of Land Comm'rs v. Antelope Coal Co.*, 2008 WY 60, ¶ 12, 185 P.3d 666, 669 (Wyo. 2008)). "We have described a defendant's prima facie showing as a 'minimal burden' or a 'slight burden,' but it is a burden nonetheless that must be supported by some evidence to support a self-

defense theory." *Johns v. State*, 2018 WY 16, ¶ 14, 409 P.3d 1260, 1265 (Wyo. 2018).  We recently clarified "[o]n a pretrial motion in a criminal prosecution, the burden is upon the defendant to place competent and convincing evidence before the court in support of his or her motion." *McCalla*, 2026 WY 18, ¶ 19, ___ P.3d. ___ (quoting 75 Am. Jur. 2d *Trial* § 36 (Nov. 2025 Update)).  "A motion cannot prove itself; representations, arguments of counsel, allegations and statements made in motions are not evidence, and allegations in motions do not amount to any proof of the facts stated." *Id.* (quoting 56 Am. Jur. 2d *Motions, Rules, and Orders* § 2 (Nov. 2025 Update)).  Therefore, Mr. Helms needed to present competent evidence to establish a prima facie showing he was entitled to self-defense immunity under Wyoming Statute § 6-2-602(f), and he could not rely on mere allegations, representations, or arguments of counsel. *Id.*  Mr. Helms attached documents to his written motion and he called one witness at the hearing.  We will evaluate whether the documents attached to Mr. Helms's written motion and the evidence adduced at the hearing, when considered together, constituted such competent evidence as would be sufficient to make the required prima facie showing.

### A. The Documents Attached to Mr. Helms's Motion to Dismiss Were Not Admissible, Competent Evidence Sufficient to Make a Prima Facie Showing He Acted in Self-defense.

[¶20]   Mr. Helms's motion alleged he was entitled to immunity because the "facts" showed he either: 1) shot Mr. Velazquez because the two men had gotten into an argument and Mr. Velazquez had pursued him into the bedroom; or 2) Mr. Helms suffered a PTSD flashback and did not know what he was doing at the time he shot his cousin.  In support of his motion to dismiss, Mr. Helms attached three exhibits: a copy of the Converse County Sheriff's office reports investigating the shooting, Dr. Holmberg's forensic evaluation, and Dr. Donegan's forensic evaluation.

[¶21]   On appeal, Mr. Helms asserts the district court erred by not considering the evidence contained in the Sheriff's office reports, and he contends the reliability of this exhibit "could not be reasonably questioned by the State . . . ."  Although the documents were attached to his motion, Mr. Helms did not seek to admit the Sheriff's office reports into evidence at the *John* Hearing.  Further, Mr. Helms did not attempt to explain, either in his motion or at the hearing, how the Sheriff's office reports would be admissible, competent evidence the district court could rely on to find Mr. Helms made his prima facie showing he was entitled to immunity from prosecution.

[¶22]   As discussed above, Mr. Helms has the burden of supporting his motion with competent evidence. *McCalla*, 2026 WY 18, ¶ 19, ___ P.3d. ___ (quoting 75 Am. Jur. 2d *Trial* § 36).  "'Competent evidence' is evidence that is both admissible and that tends to establish a fact at issue." 31A C.J.S. *Evidence* § 3 (Dec. 2025 Update).  Conversely, incompetent evidence "brings before the trier of fact evidence which is unauthenticated and therefore unworthy of belief, an example of which would be hearsay." *Holm v. State*,

7

404 P.2d 740, 743 (Wyo. 1965). Under W.R.E. 1101 (2025), the Rules of Evidence "apply to all actions and proceedings in the courts of this state[,]" unless the proceeding falls into one of the exceptions set out in subsection (b) of the Rule. While W.R.E. 1101(b)(3) excludes preliminary hearings, sentencing hearings, and certain probation proceedings, it does not exclude *John* Hearings. Therefore, the evidence Mr. Helms relied on to meet his prima facie showing needed to comply with the Wyoming Rules of Evidence. *See* W.R.E. 1101; *see also McDaniel v. State*, 24 So. 3d 654, 657 (Fla. Dist. Ct. App. 2009) ("[G]iven that the burden of proof is on the defendant to establish his entitlement to immunity, hearsay is not admissible to prove a material fact for the court's consideration[.]").

[¶23] Mr. Helms attempts to rely on statements made in the Sheriff's office reports for the truth of the matter asserted. Therefore, these statements qualify as hearsay under W.R.E. 801(c). Under W.R.E. 803(8), police reports are specifically excluded from the public records exception to the hearsay rule. Further, the Sheriff's office reports contain statements Mr. Helms and Grace made to the investigating officers, which is considered hearsay within hearsay. *See, e.g., Seaton v. State of Wyo. Highway Comm'n, Dist. No. 1,* 784 P.2d 197, 200 (Wyo. 1989) ("[T]hose assertions of a witness other than the investigating officer who prepared the report are "hearsay within hearsay."). For "hearsay included within hearsay" to be admissible, each part of the combined statements must conform with an exception to the hearsay rule. W.R.E. 805. Mr. Helms seems to assert his statements contained in the police reports should have been admissible because the State was allowed to introduce statements the defendant made to the investigating officers in the *John* case. Although the admission of a party opponent is not hearsay, this applies only when the statement "is offered against a party," as it was in the *John* case, and the rule does not allow the admission of self-serving hearsay statements. W.R.E. 801(d)(2); *John*, 2020 WY 46, ¶ 17, 460 P.3d at 1129; *see also United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."). Therefore, Mr. Helms could not introduce his own statements contained in the police reports under the party admission rule. W.R.E. 801(d)(2). Mr. Helms offered no explanation for how Grace's statements would be admissible, other than the fact hearsay statements of other witnesses were admitted in the *John* case. However, the fact that the district court in the *John* case may have permitted the introduction of inadmissible hearsay does not mean that similar hearsay is admissible in future cases, especially in cases like this one where the State objected to the admission of any hearsay evidence. Because Mr. Helms made no effort to explain how these statements are competent, admissible evidence, we cannot say the district court abused its discretion when it declined to consider the Sheriff's office reports.

[¶24] Turning to the designated examiners' reports, we have already established the district court did not abuse its discretion when it ruled it could not consider Dr. Holmberg's proposed testimony for the proffered purpose of establishing Mr. Helms was not faking his lack of memory. Dr. Holmberg's written opinion on this issue would likewise be irrelevant

to the issues at the *John* Hearing. The reports themselves contain numerous self-serving hearsay statements that are inadmissible under W.R.E. 801(c). Just like the Sheriff's office reports, Mr. Helms made no attempt to show how the designated examiners' reports constitute competent admissible evidence that would be sufficient to establish a prima facie showing he acted in self-defense. Because Mr. Helms made no effort to explain how these statements are admissible, we cannot say the district court abused its discretion when it declined to consider the designated examiners' reports.

[¶25] Because the district court could not consider the hearsay statements contained in the Sheriff's office reports or the designated examiners' reports, the attachments to his motion contained no competent evidence that would have been sufficient to establish a prima facie showing that Mr. Helms acted in self-defense when he shot Mr. Velazquez.

### B. The Evidence Mr. Helms Presented at the *John* Hearing Was Not Sufficient to Establish a Prima Facie Showing that Mr. Helms Acted in Self-Defense.

[¶26] Mr. Helms called only one witness at the *John* Hearing, the investigating officer, Lieutenant Ben Peech. Lieutenant Peech testified as follows:

- Mr. Helms was cooperative and gave several statements to law enforcement;

- Mr. Helms's statements about what happened from the time Mr. Velazquez arrived until just before the shooting were very consistent, and it was his statements about the last period of time just before the shooting that were inconsistent;

- Both Mr. Helms and Mr. Velazquez were in the military, and Mr. Velazquez had been a Green Beret;

- Mr. Velazquez was an invited guest;

- Mr. Velazquez did not have permission to enter the master bedroom;

- Mr. Velazquez's body was found "partially in the threshold of the bedroom door";

- Mr. Helms's pocketknife was found between Mr. Velazquez's hands, about a foot above his head;

- Mr. Helms did not know how the pocketknife got there, and he said it would have been in his pocket;

9

- Used chewing tobacco was also found near Mr. Velazquez;

- Mr. Helms told the officers he had swept the chew out of Mr. Velazquez's mouth to perform CPR;

- Mr. Helms would have defended Grace if he needed to;

- There was only one way out of the bedroom, and it was through the door;

- Grace told the officers she heard some bumping noises like someone had bumped off a wall or stair railing;

- A mixture of Mr. Helms's and Mr. Velazquez's DNA was found on the pocketknife; and

- Mr. Velazquez's DNA could have gotten on the knife from Mr. Helms touching the knife after reaching into Mr. Velazquez's mouth to remove the chewing tobacco.

[¶27] After presenting this testimony, Mr. Helms argued he had a reasonable belief he was in danger of injury or death because Green Berets have a "different type of training." He further asserted the presence of the pocketknife was evidence Mr. Velazquez was trying to enter the master bedroom without permission for some unlawful reason. The State argued there was no evidence Mr. Helms had been attacked or that Mr. Velazquez intended to commit an unlawful act involving force or violence.

[¶28] This case requires us to decide whether the district court correctly applied the statutory requirements, definitions, and presumptions of Wyoming Statute § 6-2-602, which states:

> (a) The use of defensive force whether actual or threatened, is reasonable when it is the defensive force that a reasonable person in like circumstances would judge necessary to prevent an injury or loss, and no more, including deadly force if necessary to prevent imminent death or serious bodily injury to the person employing the deadly force or to another person. As used in this subsection, "necessary to prevent" includes a necessity that arises from an honest belief that the danger exists whether the danger is real or apparent.

> (b) A person is presumed to have held a reasonable fear of

10

imminent peril of death or serious bodily injury to himself or another when using defensive force, including deadly force if:

(i) The intruder against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, another's home or habitation or, if that intruder had removed or was attempting to remove another against his will from his home or habitation; and

(ii) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring.

(c) The presumption set forth in subsection (b) of this section does not apply if:

(i) The person against whom the defensive force is used has a right to be in or is a lawful resident of the home or habitation, such as an owner, lessee or titleholder, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person;

(ii) The person sought to be removed is a child or grandchild, or is otherwise in the lawful custody or under the lawful guardianship of, the person against whom the defensive force is used; or

(iii) The person against whom the defensive force is used is a peace officer or employee of the Wyoming department of corrections who enters or attempts to enter another's home or habitation in the performance of his official duties.

(d) A person who unlawfully and by force enters or attempts to enter another's home or habitation is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

(e) A person who is attacked in any place where the person is lawfully present shall not have a duty to retreat before using reasonable defensive force pursuant to subsection (a) of this

11

section provided that he is not the initial aggressor and is not engaged in illegal activity.

(f) A person who uses reasonable defensive force as defined by subsection (a) of this section shall not be criminally prosecuted for that use of reasonable defensive force.

(g) As used in this section:

(i) "Habitation" means any structure which is designed or adapted for overnight accommodation, including, but not limited to, buildings, modular units, trailers, campers and tents, but does not include the inmate housing area of a jail, state penal institution or other secure facility under contract with the department of corrections to house inmates;

(ii) "Home" means any occupied residential dwelling place other than the inmate housing area of a jail, state penal institution or other secure facility under contract with the department of corrections to house inmates;

(iii) "Deadly force" means force that is intended or likely to cause death or serious bodily injury.

[¶29]  Applying Wyoming Statute § 6-2-602 to this case, Mr. Helms would be immune from prosecution only if he:

- was lawfully present in his home when the shooting occurred (subsection (e));

- was not the initial aggressor or engaged in illegal activity, and therefore had no duty to retreat (subsection (e));

- is entitled to the presumption his fear was reasonable (subsection (b));

- is entitled to the presumption Mr. Velazquez intended to commit an unlawful act involving force or violence because Mr. Velazquez was unlawfully and forcefully attempting to enter a home or habitation (subsection (d)); and

- was otherwise justified in using deadly force, and the force used was "necessary to prevent an injury or loss and no more" (subsection (a)).

12

*See John*, 2020 WY 46, ¶ 42, 460 P.3d at 1135.  When viewing the record in the light most favorable to the district court's decision, we find no error in its conclusion Mr. Helms failed to satisfy at least two of these requirements.  Because his failure to satisfy these two requirements is ruinous to his self-defense immunity claim, we will not address whether Mr. Helms satisfied the other statutory subsections.

1. *Mr. Helms Was Not Entitled to the Presumption Mr. Velazquez Intended to Commit an Unlawful Act.*

[¶30]  Under Wyoming Statute § 6-2-602(d), Mr. Helms would have been entitled to a presumption Mr. Velazquez intended to commit an unlawful act involving force or violence if Mr. Velazquez had entered or attempted to enter Mr. Helms's home or habitation "unlawfully and by force."  The district court found Mr. Helms was not entitled to this presumption because "the victim was lawfully [present] in the home."  We agree.  Mr. Helms presented no evidence showing Mr. Velazquez was "unlawfully and by force" entering or attempting to enter Mr. Helms's home or habitation.  To the contrary, the evidence established Mr. Velazquez was an invited guest in Mr. Helms's home.  Although Mr. Helms theorized the two men may have gotten into an argument, he offered only speculation to support this theory.  "Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact on any essential element." *Harnetty v. State*, 2022 WY 68, ¶ 33, 511 P.3d 165, 174 (Wyo. 2022) (citation omitted).  Therefore, Mr. Helms failed to present any competent evidence he was entitled to the presumption found in Wyoming Statute § 6-2-602(d).

2. *Mr. Helms Failed to Make a Prima Facia Showing He Used "Reasonable Defensive Force."*

[¶31]  To qualify for immunity under Wyoming Statute § 6-2-602(f), Mr. Helms had to make a prima facia showing he used "reasonable defensive force as defined by subsection (a)[.]"  Subsection (a) defines reasonable defensive force as: "the defensive force that a reasonable person in like circumstances would judge necessary to prevent an injury or loss, and no more, including deadly force if necessary to prevent imminent death or serious bodily injury to the person employing the deadly force or to another person." Wyo. Stat. Ann. § 6-2-602(a).  The district court found Mr. Helms failed to make a prima facie showing he used reasonable defensive force.  While the district court recognized "a prima facie showing is a low threshold[,]" it concluded Mr. Helms had presented no evidence "that would demonstrate directly or even by inference" the force Mr. Helms used was reasonable.

[¶32]  We agree the record is completely devoid of any evidence showing the force Mr. Helms used that night was reasonable.  The only facts in the record show the victim's body was found just outside the master bedroom, and Mr. Helms's folded pocketknife was found

approximately one-foot above Mr. Velazquez's head. No evidence was adduced at the hearing showing the use of deadly force was necessary to prevent imminent death or serious bodily injury. Mr. Helms offered only speculation about a possible attack by someone with "a different type of training," with no objective evidence to support this theory. There is nothing in the record to demonstrate directly or by inference that a reasonable person in like circumstances would have felt it necessary to use deadly force that night. *See* Wyo. Stat. Ann. § 6-2-602(a). Therefore, Mr. Helms failed to make a prima facie showing he was entitled to self-defense immunity under Wyoming Statute § 6-2-602(f).

[¶33] Because Mr. Helms failed to make a prima facia showing he satisfied all the statutory criteria for invoking self-defense immunity under Wyoming Statute § 6-2-602(f), the district court correctly denied his motion to dismiss.

### III. *Did The District Court Err When it Gave an Altered Presumption of Malice Instruction That Did Not Specifically Indicate the State Had the Burden of Proving Malice Beyond a Reasonable Doubt?*

[¶34] Mr. Helms asserts the district court violated a clear rule of law when it gave the altered malice instruction because the instruction failed to comply with W.R.E. 303, and the erroneous instruction prejudiced Mr. Helms's substantial rights. W.R.E. 303(c) states:

> Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

If the district court had given an instruction based on Wyoming Criminal Pattern Jury Instruction 21.04C, it would have complied with W.R.E. 303(c). *See* W.Cr.P.J.I. 21.04C. Instead, it gave an instruction identical to the one proposed by Mr. Helms, which omitted the portion of the instruction regarding the burden of proof. The State argues this Court should decline to review this issue under the invited error doctrine. Alternatively, the State asserts the district court did not commit plain error when it gave this instruction because the jury instructions, considered as a whole, gave a correct and complete explanation of the law.

[¶35] "The invited error doctrine 'prohibits a party from raising alleged trial court errors on appeal induced by that party's actions.'" *Townsend v. State*, 2025 WY 108, ¶ 13, 576 P.3d 1254, 1258 (Wyo. 2025) (quoting *Toth v. State*, 2015 WY 86A, ¶ 45, 353 P.3d 696,

14

710 (Wyo. 2015)). "Invited error applies when a party affirmatively waives a right or objection." *Id.*

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.

*Id.* (quoting *Jackson v. State*, 2019 WY 81, ¶ 9, 445 P.3d 983, 987 (Wyo. 2019)). Waiver requires a party to knowingly and intelligently relinquish a right, rather than merely failing to preserve it. *Id.* (quoting *Jackson*, ¶ 9, 445 P.3d at 987). If a defendant waives his right to specific jury instructions, he will be denied review under the invited error doctrine. *Id.* (quoting *Jackson*, ¶¶ 10–11, 445 P.3d at 987–88).

[¶36] In *Jackson*, we concluded the defendant waived his claim of reversible error because he offered the instructions the district court ultimately gave and did not correct them when given the opportunity, thus inviting the error. 2019 WY 81, ¶ 11, 445 P.3d 987–88. We reached a similar conclusion in *Mackley v. State*, where defense counsel negotiated with the State to draft an instruction and affirmatively endorsed it twice. 2021 WY 33, ¶ 16, 481 P.3d 639, 643 (Wyo. 2021). We found the defendant "abandoned a known right because he offered the instruction jointly with the State and declined the opportunity to object or correct any potential confusion it could cause." *Id.*

[¶37] We have recognized there is sometimes a fine line between positive acts and omissions. *Vaught v. State*, 2016 WY 7, ¶ 35, 366 P.3d 512, 520 (Wyo. 2016). However, just as in *Jackson* and *Mackley*, that line was crossed in this case. The record indicates Mr. Helms did more than passively agree with an instruction proposed by the State. Instead, Mr. Helms proposed the allegedly erroneous instruction. While it does not appear the district court expressed any concerns regarding the instruction, Mr. Helms was given an opportunity to object to the instruction or propose corrections, but he did not do so. Because Mr. Helms proposed the allegedly erroneous instruction and did not object or correct the instruction when given the opportunity to do so, he invited the error about which he now complains. *See Jackson*, ¶ 11, 445 P.3d at 987–88; *Mackley*, ¶ 16, 481 P.3d at 643. Accordingly, we will not address his argument any further.

### IV. Was the Evidence Sufficient to Support Mr. Helms's Conviction for Second-Degree Murder?

15

[¶38]  "When reviewing a claim that the evidence was insufficient to support a jury's verdict in a criminal trial, we decide whether the evidence could reasonably support the jury's verdict." *Wilson v. State*, 2025 WY 116, ¶ 11, 578 P.3d 402, 405–06 (Wyo. 2025) (quoting *Huckins v. State*, 2020 WY 21, ¶ 10, 457 P.3d 1277, 1279 (Wyo. 2020)).  We "assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Id*. at ¶ 12, 578 P.3d at 406 (quoting *Hanson v. State*, 2025 WY 80, ¶ 7, 571 P.3d 1282, 1285 (Wyo. 2025)).  Ultimately, we "defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *Hanson*, ¶ 7, 571 P.3d at 1285).  The ultimate question this Court must decide is whether the evidence "was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt." *Munoz v. State*, 2024 WY 103, ¶ 8, 556 P.3d 238, 240 (Wyo. 2024) (quoting *Hultberg v. State*, 2024 WY 59, ¶ 12, 549 P.3d 759, 761 (Wyo. 2024)).

[¶39]  The jury acquitted Mr. Helms of first-degree murder and convicted him of the lesser included offense of second-degree murder.  Although the jury was also given the option to convict Mr. Helms of the lesser included offense of voluntary manslaughter, it elected not to do so.  Mr. Helms argues the evidence was insufficient to show he acted with malice, and this Court should remand this case for an entry of a conviction for voluntary manslaughter.

[¶40]  Wyoming Statute § 6-2-104 (2023) states a person is guilty of second-degree murder if he "purposely and maliciously, but without premeditation, kills any human being . . . ."  We have held for the purposes of the second-degree murder statute, "maliciously" means "the act constituting the offense was done recklessly under circumstances manifesting an extreme indifference to the value of human life, *and* that the act was done without legal justification or excuse." *Wilkerson v. State*, 2014 WY 136, ¶ 27, 336 P.3d 1188, 1200 (Wyo. 2014).

[¶41]  Wyoming Statute § 6-2-105(a)(i) (2025) states, in relevant part, that a person is guilty of voluntary manslaughter if "he unlawfully kills any human being without malice, express or implied, . . . [v]oluntarily, upon a sudden heat of passion[.]"

> "Heat of passion" means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection or deliberation, and from passion rather than from judgment. The heat of passion must be aroused suddenly, and the act resulting in death must occur while the defendant was acting under the direct and immediate influence of such heat of passion, and

16

> before sufficient time has elapsed to permit the heat of passion to cool.

*Jacobs v. State*, 2021 WY 104, ¶ 13, 495 P.3d 303, 308 (Wyo. 2021) (quoting *Farrow v. State*, 2019 WY 30, ¶ 35, 437 P.3d 809, 820 (Wyo. 2019)). "The severe or extreme provocation that causes a heat of passion or loss of control must have been produced by the victim's actions." *Id.* at ¶ 14, 495 P.3d at 309 (citing *Krucheck v. State*, 702 P.2d 1267, 1270 (Wyo. 1985)). If a jury finds a defendant acted in a sudden heat of passion, it is precluded from finding the defendant acted with malice. *Schmuck v. State*, 2017 WY 140, ¶ 28, 406 P.3d 286, 296 (Wyo. 2017).

[¶42] The central factual disputes at trial were Mr. Helms's mental responsibility and his intent. Mr. Helms did not deny shooting Mr. Velazquez, but he claimed the jury should find him not guilty by reason of mental illness or deficiency because the shooting was the result of a PTSD flashback. At trial he did not assert he acted in self-defense. Instead, Mr. Helms argued there was no evidence he acted with malice or in a sudden heat of passion. The State asserted the jury should find Mr. Helms guilty of either first or second-degree murder because Mr. Helms killed Mr. Velazquez "without provocation [and] without reason."

[¶43] The record supports the jury's verdict of second-degree murder. The evidence established that although Mr. Helms struggled with depression and insomnia for many years, he did not faithfully take his antidepressant medication, choosing instead to self-medicate with alcohol and controlled substances. Mr. Helms voluntarily consumed multiple mood-altering substances on the night of the shooting. Mr. Helms was in possession of a pocketknife and walked past at least two pistols to get to the rifle. Mr. Helms told the officers he went for the rifle instead of the pistol because he is better with the rifle, especially when he is not in his right mind, and it is "easier to hit stuff with the rifle." Mr. Helms burst through the locked bedroom door yelling something like: "I'm going to kill this motherf*****!" Mr. Helms walked around the bed, grabbed the rifle, walked back around the bed, aimed the gun, and fired, even though Grace was screaming "It's Nick, it's Nick." Grace had never seen Mr. Helms act the way he did that night at any point during their entire 19-year marriage. Mr. Helms knew he was in his home, where his rifle was, he was able to recognize his wife, and he understood he needed to call 911 after the shooting. His only disconnect from reality appears to have been his perception of the identity of the individual he shot. The jury could have believed Dr. Donegan's testimony that Mr. Helms shot Mr. Velazquez due to a flashback, blackout, or misperception caused by his use of alcohol and controlled substances.

[¶44] Further, there is no evidence Mr. Helms acted out of passion or a loss of control caused by Mr. Velazquez's actions. In his statements to police, Mr. Helms repeatedly said there was no bad blood between the two men, and they had not gotten into an argument that night. Grace confirmed she had not heard any arguments between the two men. In

the 911 calls, both Mr. Helms and Grace told dispatch Mr. Helms "misunderstood" who Mr. Velazquez was when he fired the shot. Contrary to any assertions that Mr. Velazquez did something to provoke the shooting, Grace testified Mr. Velazquez was simply walking down the hall towards the bedroom door yelling "It's Nick. It's me" immediately before Mr. Helms shot him.

[¶45] The State presented sufficient evidence to allow the jury to conclude Mr. Helms acted "recklessly under circumstances manifesting an extreme indifference to the value of human life" when he shot Mr. Velazquez, and "the act was done without legal justification or excuse." *Wilkerson*, 2014 WY 136, ¶ 27, 336 P.3d at 1200. There was no evidence Mr. Helms acted out of "a heat of passion or loss of control" that was produced by Mr. Velazquez's actions. *See Jacobs*, 2021 WY 104, ¶ 14, 495 P.3d at 309 (citing *Krucheck v. State*, 702 P.2d at 1270). A rational jury could have reasonably concluded the State proved each element of the second-degree murder charge beyond a reasonable doubt. *Munoz*, 2024 WY 103, ¶ 13, 556 P.3d at 241 (citation omitted). The State presented sufficient evidence to sustain Mr. Helms's second-degree murder conviction.

## CONCLUSION

[¶46] The district court properly excluded Dr. Holmberg from testifying at the *John* Hearing for the purpose of establishing Mr. Helms was not malingering or making up his lack of memory. The district court did not err when it concluded Mr. Helms failed to make a prima facie showing he acted in self-defense. Mr. Helms waived his right to challenge the inference of malice instruction under the doctrine of invited error. The State presented sufficient evidence to sustain Mr. Helms's second-degree murder conviction. Affirmed.