# THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 59

APRIL TERM, A.D. 2026

June 3, 2026

PAUL EUGENE MANDERS,

Appellant
(Defendant),

v.

S-25-0144

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Weston County*
*The Honorable James Michael Causey, Judge*

**Representing Appellant:**

Office of Public Defender: Patricia L. Bennett, State Public Defender;* Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

**Representing Appellee:**

Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*An Order Substituting Patricia L. Bennett for Brandon Booth was entered on April 15, 2026.

**Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.**

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Paul Manders entered a conditional *Alford* plea to a charge of manslaughter in connection to an incident where he shot and killed his neighbor.  Mr. Manders reserved the right to appeal the district court's denial of his motion to dismiss the prosecution based on self-defense immunity under Wyoming Statute § 6-2-602(f) (2021).  We affirm.

## ISSUE

[¶2]    Mr. Manders raises a single issue:

> Whether the district court erred in denying Appellant's motion
> to dismiss pursuant to Wyoming Statute § 6-2-602(f).

## FACTS

[¶3]    On July 27, 2021, Mr. Manders called 911 to report he had killed his neighbor, Vernon Clyde.  Mr. Manders stated he told Mr. Clyde to get off his property, but Mr. Clyde would not leave and instead "came at" Mr. Manders with a skid steer, resulting in Mr. Manders shooting Mr. Clyde.  When deputies from the Weston County Sheriff's Office and agents from the Wyoming Division of Criminal Investigation arrived on the scene, they found Mr. Clyde deceased in the skid steer, which was located approximately 20 feet to the east of Mr. Manders's residence.  The image below[1] shows the approximate location of the skid steer in relation to Mr. Manders's property and the property Mr. Clyde owned jointly with his girlfriend.

---

[1] This image is primarily based on a drawing found in a report from one of the State's experts.  The Court adjusted the ownership information for the properties based on witness testimony and other exhibits admitted at trial, including maps obtained from the County Assessor's Office.

1



Approx. location of shooting

[¶4] Law enforcement interviewed witnesses who arrived at the scene after the shooting and learned Mr. Manders and Mr. Clyde had an ongoing dispute stemming from Mr. Clyde's goats repeatedly escaping onto Mr. Manders's property. During one of these incidents, Mr. Manders shot one of Mr. Clyde's goats. On the day of the shooting, Mr. Clyde was using the skid steer to move rolls of fencing to begin repairing the fence between their properties. Law enforcement found four rolls of wire fencing to the rear left of the skid steer.

[¶5] The officers also learned there was a dispute regarding the ownership of the strip of land where the skid steer was located at the time of the shooting. Mr. Clyde believed this area was a public alley or roadway that ran between his property and Mr. Manders's property, from which he could lawfully access the fence to make the necessary repairs. Mr. Manders believed the entire area was part of his property, and Mr. Clyde was not allowed to be there due to a no trespass warning the Weston County Sheriff's Office had issued to Mr. Clyde. Officers noticed there was a debris pile on this strip of land, which was made up of corrugated pipe and other construction rubble.

[¶6] While interviewing the witnesses, officers learned that neighbors observed Mr. Clyde driving his skid steer in the direction of the fence, and a short time later they heard a gunshot followed by a short pause and then three more gunshots. While documenting the scene, law enforcement noticed the tracks in the dirt indicated the skid steer was going in reverse before it came to a rest, and the control stick had blood spatter on it, which indicated Mr. Clyde's hand was not on the control stick at the time the blood spatter occurred. They also observed two of the shell casings were further away than the other

2

two. Based on the information gathered during the investigation, Mr. Manders was arrested and charged with second-degree murder.

[¶7]   Mr. Manders filed a motion to dismiss the prosecution under Wyoming Statute § 6-2-602(f).  He requested an evidentiary hearing pursuant to *State v. John*, 2020 WY 46, 460 P.3d 1122 (Wyo. 2020), and asserted the evidence would show he was in front of his home when Mr. Clyde approached him and attempted to attack him with the skid steer.  He argued he was entitled to the statutory presumption his fear was reasonable under Wyoming Statute § 6-2-602(b) because "Mr. Clyde unlawfully entered Mr. Manders['s] driveway, accelerated his skid steer in the direction of Mr. Manders unlawfully and forcefully[,] and the force used by Mr. Manders was necessary to repel the attack from Mr. Clyde."  He asserted the State would not be able to present evidence to "overcome the presumption and establish even the minimum burden that there [was] probable cause to believe [Mr.] Manders was not acting in self-defense when he shot Mr. [] Clyde."

[¶8]   The State's response asserted Mr. Manders was not entitled to the presumptions under Wyoming Statute § 6-2-602(b) and (d), also known as the castle doctrine presumptions, because there was no evidence Mr. Clyde was in the process of entering Mr. Manders's home.  The State also claimed Mr. Clyde was not the initial aggressor and there was no evidence the skid steer was moving forward to attack Mr. Manders at the time of the shooting.  The State argued Mr. Manders's use of deadly force was not reasonable or justified.

[¶9]   The district court held a three-day evidentiary hearing on Mr. Manders's motion to dismiss.[2]  Because Mr. Manders had the burden of establishing a prima facie showing of self-defense, he proceeded first with his presentation of witnesses.  He offered evidence showing Mr. Clyde had previously threatened him, and he had reported those threats to the police.  Mr. Manders also offered the recording of his call to 911, wherein he repeatedly stated Mr. Clyde "came at" him with the skid steer and was threatening to "smash" Mr. Manders and his house. Mr. Manders offered the testimony of an accident reconstructionist who opined the tracks in the dirt showed the skid steer had entered "the driveway" area to the east of Mr. Manders's residence.  She further opined the position of the forklift tines, which were elevated at a 45-degree angle, was consistent with Mr. Clyde using the skid steer to attack Mr. Manders.  After hearing this evidence, the district court found Mr. Manders met his burden of making a prima facia showing that Wyoming Statute § 6-2-602(f) applied.  The district court then allowed the State to call witnesses to rebut that showing.

---

[2] The *John* hearing was combined with a hearing under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to determine if Mr. Manders's expert and the State's experts would be allowed to testify at trial.  The district court ultimately concluded all four witnesses would be allowed to testify, and it considered their testimony when making its decision on Mr. Manders's motion to dismiss.

3

[¶10] The State called its own experts who opined the physical evidence suggested Mr. Clyde was not moving forward to attack Mr. Manders at the time he was shot. They testified the tracks in the dirt and the angle of the forklift tines were consistent with Mr. Clyde using the skid steer to clear the debris pile in preparation for repairing the fence. Although the skid steer was turned on when law enforcement arrived on the scene, the idle was turned all the way down, and the parking brake was engaged. The tracks indicated the skid steer had been in reverse until it came to a final rest. In addition, the fact that the bullet casings were found on top of the tracks in the dirt indicated the casings had been put there after the skid steer had come to a stop and the parking brake had been engaged. Further, the lack of blood spatter on Mr. Clyde's hands and the presence of blood on the control stick suggested that his hand was not on the control stick when the "blood event" occurred. Similarly, the location of the blood pool on the left tread of the skid steer indicated the blood was deposited either contemporaneously with the shooting or directly afterwards, and the skid steer was not in motion when the blood was deposited. If the skid steer had been moving when the blood was deposited, the blood would have picked up some of the dirt from the ground and become muddy, but that did not happen here.

[¶11] The State presented evidence showing the area where Mr. Clyde was shot may have been an alley or county road, known as Wilson Avenue, and it was not part of Mr. Manders's driveway. Mr. Clyde had gotten a map from the County Assessor sometime prior to the shooting, and he believed this "road" was a public access point. Witnesses also testified Mr. Clyde was in a good mood on the day of the shooting. He had spoken with multiple neighbors about helping him fix the fence that weekend. Multiple witnesses also testified Mr. Clyde was a novice user of the skid steer, and he could not operate it at high speeds on the rough county roads.

[¶12] After hearing the evidence presented by the State, the district court held the State proved by a preponderance of the evidence Mr. Manders did not act in self-defense. The district court acknowledged the preponderance of the evidence standard was "vastly different" than the reasonable doubt standard that would apply at trial, and a jury might reach a different conclusion. The district court denied Mr. Manders's motion to dismiss.

[¶13] After the district court ruled on the motion to dismiss, the parties entered into a conditional plea agreement. Mr. Manders agreed to enter an *Alford* plea to an amended charge of manslaughter, while reserving his right to challenge the district court's denial of his motion to dismiss. The district court accepted Mr. Manders's conditional *Alford* plea and sentenced him to a term of 16 to 20 years in prison. This appeal timely followed.

## STANDARD OF REVIEW

[¶14] Under Wyoming Statute § 6-2-602(f), a person who uses reasonable defensive force, as defined in § 6-2-602(a), "shall not be criminally prosecuted" for the use of that reasonable defensive force. When an accused moves to dismiss a criminal charge on the

4

grounds of self-defense immunity under Wyoming Statute § 6-2-602(f), "the district court must hold an evidentiary hearing to determine whether the accused may be tried for the charge." *McCalla v. State*, 2026 WY 18, ¶ 14, 583 P.3d 679, 684 (Wyo. 2026) (quoting *John*, 2020 WY 46, ¶ 40, 460 P.3d at 1134).  At the *John* hearing,

> the accused must make a prima facie showing that § 6-2-602(f) applies. If he satisfies this minimal burden, the burden shifts to the State to establish by a preponderance of the evidence that § 6-2-602(f)does not apply. If the State cannot meet its burden the charge must be dismissed.

*Id.* (quoting *John*, ¶ 40, 460 P.3d at 1134).  If the district court denies the accused's motion to dismiss, the case proceeds to trial, where the accused may still raise self-defense as an affirmative defense. *Id.* (citing *John*, ¶ 40, 460 P.3d at 1134).

[¶15]   When reviewing the district court's denial of Mr. Manders's motion to dismiss, "we view the record in the light most favorable to the district court's decision." *Helms v. State*, 2026 WY 24, ¶ 17, 584 P.3d 428, 435 (Wyo. 2026) (citing *John*, ¶ 59, 460 P.3d at 1137–38).

> We defer to the district court's factual findings unless they are clearly erroneous. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We defer to the district court because it had an opportunity to assess the witnesses' credibility, weigh the evidence, and make the necessary inferences, deductions, and conclusions. On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. However, the ultimate question of whether the district court properly applied the statutory requirements, definitions, and presumptions under Wyoming Statute § 6-2-602 to the underlying facts is a question of law we review de novo.

*Id.* (citation modified).

## DISCUSSION

[¶16]   Under Wyoming Statute § 6-2-602(f), "[a] person who uses reasonable defensive force as defined by subsection (a) of this section shall not be criminally prosecuted for that use of reasonable defensive force."   Wyoming Statute § 6-2-602(a) defines reasonable

5

defensive force as the amount of force "a reasonable person in like circumstances would judge necessary to prevent an injury or loss, and no more . . . ." When considering whether the defensive force used was reasonable, Wyoming Statute § 6-2-602(a) states: "'necessary to prevent' includes a necessity that arises from an honest belief that the danger exists whether the danger is real or apparent." The castle doctrine presumptions set out in Wyoming Statute § 6-2-602(b) and (d), establish certain circumstances where "[a] person is presumed to have held a reasonable fear of imminent peril of death or serious bodily injury to himself or another when using defensive force . . . .":

> (b) A person is presumed to have held a reasonable fear of imminent peril of death or serious bodily injury to himself or another when using defensive force, including deadly force if:
>
> > (i) The intruder against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, another's home or habitation or, if that intruder had removed or was attempting to remove another against his will from his home or habitation; and
> >
> > (ii) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring.
>
> \*     \*     \*
>
> (d) A person who unlawfully and by force enters or attempts to enter another's home or habitation is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

[¶17] Mr. Manders argues the State presented insufficient evidence to show the castle doctrine presumptions do not apply in this case. To determine if Mr. Manders is entitled to these presumptions, we must determine if Mr. Clyde was "unlawfully and forcefully" entering or attempting to enter Mr. Manders's "home or habitation" at the time Mr. Manders used defensive force. Wyo. Stat. Ann. § 6-2-602(b), (d). Mr. Manders also asserts the district court's findings, "whether considered alone or in the aggregate," fail to demonstrate Mr. Manders was not acting in self-defense, and he is entitled to immunity from prosecution under Wyoming Statute § 6-2-602(f). We will address each of these arguments in turn.

6

*I.  The State established by a preponderance of the evidence that Mr. Manders was not entitled to the Castle Doctrine presumptions under Wyoming Statute § 6-2-602(b) and (d).*

[¶18]  "Wyoming has long recognized the 'castle doctrine' which holds 'a person is not required to retreat and may stand his ground and kill his assailant if he is assaulted, without fault, in his own home.'" *Howitt v. State*, 2022 WY 152, ¶ 25, 521 P.3d 314, 321 (Wyo. 2022) (quoting *Drennen v. State*, 2013 WY 118, ¶ 24, 311 P.3d 116, 125 (Wyo. 2013)). "In Wyoming, a person has a greater right to use self-defense within one's 'home or habitation.'" *Id.* (quoting *Knospler v. State*, 2016 WY 1, ¶ 23, 366 P.3d 479, 485 (Wyo. 2016)).  Under the plain language of the statute, Mr. Manders is only entitled to the statutory castle doctrine presumptions if: 1) he was in his "home" or "habitation," and 2) Mr. Clyde was in the process of unlawfully and forcibly entering or had entered that home or habitation when Mr. Manders used defensive force. Wyo. Stat. Ann. § 6-2-602(b), (d). Wyoming Statute § 6-2-602(g) defines "habitation" and "home" as follows:

> (i) "Habitation" means any structure which is designed or adapted for overnight accommodation, including, but not limited to, buildings, modular units, trailers, campers and tents, but does not include the inmate housing area of a jail, state penal institution or other secure facility under contract with the department of corrections to house inmates;

> (ii) "Home" means any occupied residential dwelling place other than the inmate housing area of a jail, state penal institution or other secure facility under contract with the department of corrections to house inmates[.]

### A. Mr. Clyde was not unlawfully and forcibly entering Mr. Manders's home or habitation.

[¶19]  The undisputed evidence shows Mr. Clyde was shot in the skid steer approximately 20 to 30 feet away from the east side of Mr. Manders's house.  Mr. Manders subjectively believed this area to be his driveway.  In his 911 call, Mr. Manders informed the dispatcher that he saw Mr. Clyde driving the skid steer on his property, and Mr. Manders came out of his house to tell Mr. Clyde to get off his property.  There is no evidence Mr. Clyde ever entered or attempted to enter Mr. Manders's house.

[¶20]  Although Mr. Manders concedes there is no evidence Mr. Clyde ever entered his house, Mr. Manders contends he is still entitled to the presumptions under Wyoming Statute § 6-2-602(b) and (d) because he believed Mr. Clyde was in the process of entering his home at the time he defended himself.  He asserts under our holding in *Howitt v. State*, 2022 WY 152, 521 P.3d 314, Mr. Clyde's presence in Mr. Mander's driveway combined

7

with his threat to "smash" Mr. Manders and his house was enough to establish Mr. Clyde was in the process of entering Mr. Manders's home or habitation and entitle him to the statutory presumptions.

[¶21] Mr. Manders's reliance on *Howitt* is misplaced. In *Howitt*, we specifically stated Mr. Howitt's subjective belief that the victim was going to enter the vehicle where Mr. Howitt had been sleeping, "standing alone, would be insufficient to support giving a castle doctrine instruction." 2022 WY 152, ¶ 39, 521 P.3d at 326. However, we found there was some evidence the victim had "bumped" against and/or knocked on the windows of the vehicle while threatening to assault Mr. Howitt. *Id.* at ¶ 40, 521 P.3d at 326. We held this was enough to warrant giving a jury instruction on the castle doctrine to allow the jury to decide if the victim was attempting to unlawfully and forcibly enter Mr. Howitt's home or habitation. *Id*.

[¶22] We also note that a different standard of review applies in this case than to the question posed in *Howitt*. When deciding if a trial court should have given the defendant's requested jury instruction, "we view the evidence in the light most favorable to [the defendant] and accept all his statements as true." *Howitt*, ¶ 39, 521 P.3d at 326 (citing *Smith v. State*, 2021 WY 28, ¶ 25, 480 P.3d 532, 538 (Wyo. 2021)). However, as discussed above, when reviewing a district court's ruling denying a motion to dismiss after a *John* hearing, we review the evidence in the light most favorable to the district court's decision. *Helms*, 2026 WY 24, ¶ 17, 584 P.3d at 435 (citing *John*, 2020 WY 46, ¶ 59, 460 P.3d at 1137–38).

[¶23] Viewing the evidence in the light most favorable to the district court in this case, there is no evidence, other than Mr. Manders's subjective belief, that Mr. Clyde was "in the process of entering" his home or habitation. Thus, Mr. Manders's subjective belief, standing alone, is not enough to warrant the application of the castle doctrine presumptions set forth in Wyoming Statute § 6-2-602(b) and (d).

### B. A driveway does not fall under the statutory definitions of a "Home" or "Habitation".

[¶24] Although Mr. Clyde was killed in an area Mr. Manders believed to be his driveway, he asserts this area qualifies as his "home or habitation" because the shooting occurred "directly in front of [his] garage," and the "garage was attached to the main residence[,] directly below the main residence." As discussed above, there was a dispute about whether the area where the shooting occurred was part of Mr. Manders's property or a public road or alleyway. The district court found the State had demonstrated by a preponderance of the evidence "the location of the shooting appeared to have at least once been a roadway of some sort[.]" Reviewing the record in a light most favorable to the district court's decision, the State presented evidence the shooting occurred in a public place, not Mr. Manders's driveway.

8

[¶25] Even if we could consider the area where the shooting occurred as part of Mr. Manders's driveway, he would not be entitled to the presumptions he seeks. The statutory definitions of "home" and "habitation" include "any structure which is designed or adapted for overnight accommodation" and "any occupied residential dwelling place," other than a correctional facility. Wyo. Stat. Ann. § 6-2-602(g). Mr. Manders wants us to find these definitions include the area he believed to be his driveway. "When interpreting statutes, our primary goal is to ascertain legislative intent." *Castaner v. State*, 2026 WY 25, ¶ 17, 584 P.3d 454, 461–62 (Wyo. 2026) (citing *State v. Mares*, 2014 WY 126, ¶ 23, 335 P.3d 487, 497 (Wyo. 2014)).

> Courts begin by looking to the plain language of the statute and use the ordinary and everyday meaning. If the language of the statute is clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. We construe the statute as a whole giving effect to every word, clause, and sentence and will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions.

*Id*. (quoting *Mares*, ¶ 23, 335 P.3d at 497) (citation modified). Although the statutory definitions specifically reference campers, trailers, tents, and modular units, they do not mention driveways, yards, or other areas that are outside of these structures or occupied dwellings that make up a "home" or "habitation." Wyo. Stat. Ann. § 6-2-602(g). "[T]his Court may not add language to a statute under 'the guise of statutory interpretation.'" *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 44, 486 P.3d 964, 976 (Wyo. 2021) (quoting *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019)). We therefore decline Mr. Manders's invitation to extend the statutory definitions of "home" or "habitation" to include driveways, yards, and other areas outside of a structure or occupied dwelling.

[¶26] The evidence established Mr. Manders was not in his home or habitation at the time of the shooting, and Mr. Clyde was not unlawfully and forcibly entering Mr. Manders's home or habitation. Therefore, the State presented sufficient evidence showing the presumptions in Wyoming Statute § 6-2-602(b) and (d) were inapplicable in this case.

## II. The State established by a preponderance of the evidence that Wyoming Statute § 6-2-602(f) does not apply in this case.

[¶27] As discussed above, Wyoming Statute § 6-2-602(f) provides "[a] person who uses reasonable defensive force as defined by subsection (a) of this section shall not be criminally prosecuted for that use of reasonable defensive force." Reasonable defensive force is the amount of defensive force "a reasonable person in like circumstances would

9

judge necessary to prevent an injury or loss, and no more . . . ." Wyo. Stat. Ann. § 6-2-602(a). After finding Mr. Manders made a prima facie showing he acted in self-defense, the district court required the State to prove by a preponderance of the evidence Wyoming Statute § 6-2-602(f) did not apply because Mr. Manders was not acting in self-defense. In its written order entered after the *John* hearing, the district court found the State met this burden:

> [T]he State's case informed the [c]ourt: that the location of the shooting appeared to have at least once been a roadway of some sort; that both men were therefore lawfully present at the location of the shooting; that Mr. Clyde was in a joyful or happy mood that day (including just moments before the shooting); that Mr. Clyde was attempting to address the point of contention with [Mr. Manders] by repairing or replacing the fence, which was a legal activity; and that Mr. Clyde was a novice user of the [skid steer] at best, and he had a fair amount of difficulty in using the machine that he was operating at the time he was killed. When combined with what [sic] the facts that Mr. Clyde was killed inside the vehicle, and that the vehicle was moving backwards at the time of his death, the State's evidence was sufficient to show that subsection (f) should not apply in this case.

[¶28] Mr. Manders argues the State presented insufficient evidence the location of the shooting was public property and Mr. Clyde was lawfully present in the location where the shooting occurred. Mr. Manders further asserts the State failed to present any evidence he was the initial aggressor or engaged in an illegal activity. Finally, Mr. Manders claims the district court placed too much weight on the fact the skid steer came to rest while in reverse.

[¶29] The State had the burden of proving by a preponderance of the evidence that Wyoming Statute § 6-2-602(f) does not apply in this case. *McCalla*, 2026 WY 18, ¶ 14, 583 P.3d at 684 (quoting *John*, 2020 WY 46, ¶ 40, 460 P.3d at 1134). "A 'preponderance of the evidence' is defined as proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Traylor v. Craft*, 2024 WY 74, ¶ 47, 552 P.3d 351, 361 (Wyo. 2024) (quoting *Davis v. State*, 2018 WY 40, ¶ 47, 415 P.3d 666, 682 (Wyo. 2018)). Viewing the record in a light most favorable to the district court's decision, we conclude the State met its burden of proving by a preponderance of the evidence that subsection (f) does not apply in this case.

[¶30] As discussed above, the State presented evidence the maps available through the County Assessor's Office show the area where the shooting took place is a road or alley that is open to the public. While these maps may be inaccurate, Mr. Clyde had obtained a map from the County Assessor sometime prior to the shooting, and he believed he could

use Wilson Avenue to lawfully access the fence to complete the needed repairs. Mr. Clyde never indicated to those neighbors who would be helping him repair the fence that they would be trespassing on Mr. Manders's property. Thus, the evidence shows it is more probable than not the location of the shooting was once "a roadway of some sort," and both Mr. Manders and Mr. Clyde were lawfully present in the location of the shooting.

[¶31] Multiple witnesses testified Mr. Clyde was in a good mood just minutes before the shooting. Further, Mr. Clyde had spoken with multiple neighbors about helping him fix the fence that weekend, and he was seen transporting the fencing materials just prior to the shooting. Therefore, the evidence shows it is more probable than not Mr. Clyde went to the disputed area with the intention of fixing the fence, not to threaten or attack Mr. Manders.

[¶32] At least two witnesses testified Mr. Clyde was an inexperienced skid steer operator. He had only owned the skid steer for approximately six months, and he did not operate it at high speeds. This makes it less probable that Mr. Clyde would choose to use the skid steer as a weapon to attack Mr. Manders.

[¶33] The undisputed evidence showed the skid steer moved into reverse until it came to a stop. In addition, the undisputed evidence showed the bullet casings were on top of the tracks in the dirt, meaning the bullets were fired either while the skid steer was in reverse or after it had come to a stop. Further, the blood that had pooled on the left tread of the skid steer had not been disturbed and had not come into contact with any dirt, indicating the skid steer was in park when Mr. Clyde was shot. Finally, the blood on the control stick and lack of blood on Mr. Clyde's hands indicate Mr. Clyde's hand was not on the control stick when he was shot. This evidence makes it more probable than not that Mr. Clyde was shot while sitting in the skid steer, while it was stationary with the parking brake on, and not while using it to attack Mr. Manders.

[¶34] Under Wyoming Statute § 6-2-602(e), "[a] person who is attacked in any place where the person is lawfully present shall not have a duty to retreat before using reasonable defensive force pursuant to subsection (a) of this section provided that he is not the initial aggressor and is not engaged in illegal activity." Mr. Manders asserts the State failed to present any evidence he was the initial aggressor. However, the physical evidence discussed above could support such a finding. The tracks in the dirt indicate Mr. Clyde drove the skid steer as far forward as the debris pile, which was several feet away from Mr. Manders's garage. Mr. Clyde may have threatened to "smash" Mr. Manders and his house after Mr. Manders exited his home to confront Mr. Clyde about allegedly trespassing.[3] "We have consistently held that words alone do not make a person the aggressor and there

---

[3] One of the State's experts opined it would have been extremely difficult for Mr. Manders to hear what Mr. Clyde was saying if the engine of the skid steer was running at full throttle and moving. Another witness testified it was difficult to hear what Mr. Clyde was saying to her when the skid steer was running.

must be 'some sort of physical aggression or a threat of imminent use of deadly force before a person will be considered an aggressor.'" *McCalla*, 2026 WY 18, ¶ 24, 583 P.3d at 687 (quoting *Schnitker v. State*, 2017 WY 96, ¶ 14, 401 P.3d 39, 44 (Wyo. 2017)). On the other hand, Mr. Manders exited his home, approached Mr. Clyde in an area where Mr. Clyde had reason to believe he could lawfully be, and eventually shot Mr. Clyde multiple times while the skid steer was either parked or in reverse.

[¶35] Even if we assume Mr. Clyde was the initial aggressor, the State proved by a preponderance of the evidence that Mr. Clyde had either withdrawn or had indicated an intent to withdraw from the altercation before Mr. Manders used defensive force. Mr. Manders then shot Mr. Clyde while the skid steer was in reverse or parked, rendering him the initial aggressor and forfeiting his right to immunity from prosecution under Wyoming Statute § 6-2-602(f). *See McCalla*, 2026 WY 18, ¶ 30, 583 P.3d at 688 (discussing how a defendant can forfeit immunity by reengaging a victim who had indicated a desire to end an altercation).

[¶36] When all this evidence is considered together, the district court reasonably found the State proved by a preponderance of the evidence that Mr. Manders did not use "the defensive force that a reasonable person in like circumstances would judge necessary to prevent an injury or loss, and no more" as required by Wyoming Statute § 6-2-602(a). This evidence supports a finding that it is more probable than not that it was not necessary for Mr. Manders to use deadly force "to prevent imminent death or serious bodily injury[.]" *Id.* Because Mr. Manders did not use reasonable defensive force as defined by Wyoming Statute § 6-2-602(a), the record supports the district court's conclusion that Mr. Manders was not entitled to self-defense immunity under Wyoming Statute § 6-2-602(f). Mr. Manders could still have raised self-defense as an affirmative defense at trial, if he so desired. *John*, 2020 WY 46, ¶ 40, 460 P.3d at 1134 (citations omitted). However, he was not entitled to have his case dismissed on the grounds of self-defense immunity under Wyoming Statute § 6-2-602(f).

## CONCLUSION

[¶37] The district court did not err when it denied Mr. Manders's motion to dismiss pursuant to Wyoming Statute § 6-2-602(f). Mr. Manders was not entitled to the castle doctrine presumptions because there is no evidence the victim was unlawfully and forcibly entering or attempting to enter a home or habitation. The record supports the district court's finding the State met its burden of proving by a preponderance of the evidence Mr. Manders was not entitled to self-defense immunity. Affirmed.